UNIVERSITY OF ARKANSAS.

Fulbright College of Arts & Sciences
*Dean's Office*

March 12, 2026

Dr. Najja Baptist
Associate Professor of Political Science
1 University of Arkansas
Fayetteville, AR 72701

Dear Dr. Baptist,

I am writing as a follow-up to our meeting on March 11, 2026. Political Science Chair William Schreckhise, Associate Dean Stephanie Schulte, Assistant Dean Donna Johnson, your Attorney JJ Thompson, and Managing Associate Bill Kincaid joined us in our meeting.

During that meeting, I shared with you in detail the reasons that I was considering recommending your dismissal from employment for cause and provided you with a final opportunity to address those concerns. Our meeting included a detailed discussion of concerns with documentation that you had submitted as evidence of research activity. In response, you declined to provide any additional information regarding the issues identified, stating only words to the effect that your research was being misinterpreted and that you stood by the material that you had submitted. While it was difficult to hear what you said, it sounded as though you stated that I (the dean) needed to "leave Fayetteville."

After considering your responses, at the conclusion of the meeting, I shared with you that I had concluded that it was necessary to recommend your dismissal for cause.

Pursuant to University of Arkansas Board of Trustees Policies 405.1.IV.C and 405.4.III.A, and Academic Policy Series 1405.11VII.A.1, I am writing to notify you that I am recommending your dismissal from employment for cause.

Board Policy 405.1 indicates that tenured faculty may be dismissed for cause, which is defined as conduct that demonstrates the faculty member lacks the willingness or ability to perform duties or responsibilities to the University, or that otherwise serves as the basis for disciplinary action, including but not limited to the following:

- theft or intentional misuse of property

- violation of University policy, or state or federal law, substantially related to performance of faculty responsibilities or fitness to serve the University

- professional dishonesty or plagiarism

- unethical conduct related to fitness to engage in teaching, research, service/outreach and/or administration, or otherwise related to the faculty member's employment or public employment

- a pattern of conduct that is detrimental to the productive and efficient operation of the instructional or work environment

Your conduct meets all of these criteria.

I also believe you have engaged in conduct that is contrary to Board Policy 335.1, the University's ethical conduct policy, which recognizes that the University's reputation "is one of its most valuable assets and [that the University] is committed to maintaining the trust and confidence of both the University community and the citizens of the State of Arkansas."

The policy additionally provides that "[e]mployees shall conduct themselves in a manner that strengthens the public's trust and confidence by adhering to the following principles: conduct that is beyond reproach and integrity of the highest caliber; honesty and fairness; and accountability, transparency, and commitment to compliance." You have failed to do that.

Overall, you have engaged in a pattern of action that is detrimental to the functioning of the College, the Department, and the Blair Center, as well as the University as a whole.

As discussed when we met, to inform my decision, in addition to your responses in our meeting, I carefully reviewed information collected and presented to you as well as your responses to that information during and immediately following meetings on 1) July 3, 2025 and 2) July 11, 2025, 3) your subsequent responses to Internal Audit during their investigation, as well as 4) findings in the Compliance Internal Audit Report (26-03), a copy of which is attached.

As you will recall, on July 3 and July 11, 2025, we met and discussed your use of University funds from various sources for travel purposes. At that time, I questioned whether the expenses were directly research related and appropriate for University expenditures.

Specifically, on July 3, 2025, I presented concerns about your submission of an official function form and expense documentation for Tupelo Honey Kitchen catering and the rental of the Gala Event Center that occurred on the same day, at the same time, and in the same location as your wedding, per your wedding invitation. Documentation referred to the event as a "Banquet dinner" and the "Baptist dinner." Furthermore, I presented concerns about the rental of Pawley's Plantation Villa VRBO for two people that began on your wedding night and continued for two subsequent nights, and associated meal documentation, which you reported as a business expense.

In that meeting, I asked if you paid for your wedding with your travel card. You denied doing so. You said your wedding reception was held in a community room in the housing complex where your now-wife lived. You asserted that you held a focus group the day of your wedding. You also asserted that lodging and meals on your wedding night were University meetings during which you were conducting interviews.

In that session, I showed you a receipt from Pawley's Raw Bar restaurant from June 10, 2025, indicating two guests were present and itemized two drinks and two waters, two appetizers, and two entrees. You indicated you ate and drank everything on the receipt and did not pay for your spouse.

I asked you to provide evidence of the research conducted at these events, evidence of research productivity during the month of June in Tennessee, and a copy of the IRB protocol required to conduct human-subjects research. You agreed to provide that documentation. In the wake of the meeting, however, you did not provide sufficient evidence of research productivity. The only thing you provided were four pages of handwritten notes on hotel stationery.

On July 11, 2025, we met again. In that meeting, I asked for clarification about what occurred on the day of your wedding. You stated you had canceled your wedding reception due to personal reasons and that the focus group "got attached to the reception." You stated yon did not have a party after your wedding and instead "got into a van and went to the Gala for a focus group." I

then showed you several images that appear to be of you and your wife dancing at a wedding reception in front of a marble wall.

We discussed your IRB again and you claimed you had a valid IRB protocol. You denied wrongdoing. During this meeting, I told you I believed you were being untruthful.

On August 1, 2025, Fulbright College asked Internal Audit to review your use of travel funds including but not limited to events and activities surrounding your wedding. (The College had already reported an apparent loss of $1,000 or more on June 30, 2025, in accordance with the requirements of Arkansas Code Annotated (A.C.A) § 25-1-124.)

In response to this notification, Internal Andit began an inquiry into thirteen months of your research related travel activities (July 1, 2024 - July 31, 2025). As a part of its review, on October 1, 2025, Internal Audit provided you with a detailed spreadsheet showing the questioned travel and providing you an opportunity to respond to each individual trip. You were also invited to provide any level of supporting documentation of business purpose that you had to offer.

You provided your responses to the spreadsheet on October 15, 2025. At that time, you provided no supporting documentation, even though you were first requested to provide documentation of research activity in early July.

On December 5, 2025, you were furnished with a copy of Internal Audit's draft findings and provided one more opportunity to make immediately available any existing research-related documentation from the questioned travel. Further, on December 9, 2025, you were told that "data should be evidence that interviews, focus groups, or surveys were conducted, and that the data collected could be used in research publications. The data should include corroboration of specific dates, locations, number of participants, and methods of collection."

On December 15, 2025, more than five months after you were originally asked to provide documentation of research activity, you provided a set of 108 Microsoft Word documents to Internal Audit, which you described as being furnished "in anonymized and aggregate form, consistent with applicable research-ethics standards."
The documents provided were analyzed by Internal Audit, as well as by Fulbright College, with assistance from other University units. I provided you a copy of that assessment in our meeting on March 11, 2026.

Internal Audit completed its work and presented its findings to the University's Board of Trustees on March 9, 2026. In advance of and again at our meeting on March 11, 2026, I furnished you with copies of Compliance Internal Audit Report (26-03).

To compile this report, Internal Audit undertook a detailed test of travel expenses incurred during and after your wedding, as well as an expanded test of previous and subsequent reported research travel. Through Workday expense report testing, third-party confirmation, examination of emails, submitted research documentation, publicly available information and direct observation (including auditor site visits to Columbia, SC and Pawley's Island), the audit made a number of findings. Here are a few:

- Tupelo Honey verified staff was present on June 7, 2025, at a wedding reception at the Gala Event Center that featured music and wedding attire.

- At the Gala Event Center, Internal Audit identified the faux marble wall and distinctive chairs featured in the background of your wedding pictures which you had claimed were taken at the church.

- A waitress at Pawley's Raw Bar confirmed that you dined with a female guest on June 10, 2025, and that you did not consume all of the items listed on the receipt as you previously stated.

- Internal Audit reported that you declined a meeting via email stating you would "be on my honeymoon" and sent another email stating "I'm available next Wednesday. Got a wedding and honeymoon this week." Internal audit also found that you left a review on the Pawley's Island VRBO website describing it as "a spectacular stay for us newlyweds." However, the report noted that your written response from October 15, 2025, specifically stated "no honeymoon was taken."

- Email documentation discovered by Internal Audit states that you hold multiple leadership positions within the United House of Prayer (UHOP), including with respect to securing housing arrangements for conferences. Public information identifying UHOP events were held on the same dates and locations as research trips charged to the University. No conflict-of-interest and commitment disclosures have been made to the University indicating that you held multiple leadership positions for this private organization, in connection with which you state that you were simultaneously conducting research and for which you were charging the University for travel expenses to attend the organization's meetings. Accordingly, your University supervisory chain was unaware of this apparent conflict-of-interest, no opportunity existed to consider

Old Main 525 • Fayetteville, AR 72701 • 479-575-3684 • fulbright.uark.edu
*The University of Arkansas is an equal opportunity institution.*

whether this was a permissible conflict and whether use of travel funds in this manner was appropriate, and no conflict-of-interest management plan was ever established.

- At a minimum there was an extraordinary, improper, and undisclosed commingling of business and personal purposes for the claimed travel expenses.

- In your written response to Internal Audit, you reported you conducted focus groups interviews, and participant observer research that was approved and on file with IRB. However, Internal Audit confirmed you had no valid IRB protocols during this period.

- Numerous anomalies were noted by both Internal Audit and Fulbright College, in consultation with other University units, with the documents that you submitted as proposed evidence of bona fide research activity, including, but not limited to replication of identical responses, lack of reported interaction between participants, presence of unusually formal and polished language (that lacks filler words, fragments, contractions and false starts), variance in British and American spellings, unusual data collection dates that occurred on major holidays, lack of summary participant data, and metadata indicating batch document creation. The documents were deemed not credible evidence of research business activity.

  o The records provided were described by your counsel as "a substantial effort to provide extensive documentation and research output in anonymized and aggregate form, consistent with applicable research-ethics standards," and, in particular, with respect to South Carolina travel, "a comprehensive set of materials associated with that work, including anonymized focus-group transcripts, supporting research summaries, and contextual documentation reflecting the scholarly purpose and outcomes of those trips."

  o Upon examination, all the records appear to be intended as transcripts of focus group sessions. No records provided represent "supporting research summaries" or "contextual documentation reflecting the scholarly purpose and outcomes of those trips" as suggested when the records were furnished to Internal Audit.

  o Other than for the Gala Center, none of the records specify the actual location where the sessions were conducted.

  o The assessment of the 108 Word documents that you submitted identified concerns and anomalies that would not appear to be explained by an effort to render the data anonymous.

  o As one simple but obvious example, of the records for the Gala Center session, as they began their answers to:
    ▪ Question two (about if politicians are actively working against people):
- The second participation at nearly every table said a version of: "I'd say partially."
- The third participant at nearly every table said precisely: "For me it's a yes."
    ▪ Question three (about the policy area that they believed was most

threatened):
- The first participant on nearly every panel cited health concerns.
- The second participant on nearly every panel cited small businesses.
- The third cited civil rights.
- The fourth cited the environment.

  o Legitimate redaction of bona fide, existing records, removing names or other personally identifying information, could have easily been conducted using standard redaction techniques.

· As one additional issue, you indicated that you had to modify your travel plans and evacuate from Augusta, Georgia, due to Hurricane Helene on September 27th, 2024, relocating to Columbia, SC, checking in on the 27th and checking out on the 29th. The Hurricane hit Augusta early on the 27th. Yet you submitted focus group interview transcripts from September 27th, 28th, and 29th. Each state that it was conducted in Augusta. If you were sheltering in Columbia, it would not have been possible to conduct focus group interviews on those days. There were other dates when your travel schedule would not have allowed you to take part in a focus group, but you submitted a transcript indicating that one had occurred.

Ultimately, the Internal Audit report concluded that you are responsible for an apparent loss totaling $48,344.26 in travel expenses from multiple funding sources. This investigation determined that you misappropriated funds, that you failed to follow University Travel Policy for Traveling Using Federally Funded Grants, that you submitted non-credible evidence of research business purposes, and that you provided conflicting narratives around your travel activities. In general, the University's travel policy prohibits expenditure of university funds and use of University-issued credit cards for any expenses that are not official business expenses. This would include circumstances where you are impermissibly blending personal activities with official activities without full disclosure and establishment of an approved conflict management plan.

The evidence collected in Internal Audit's report leads to the conclusion that you improperly spent University funds.

Misuse of University funds is completely unacceptable.

After careful consideration and after referencing Board of Trustees Policy 405.1, I conclude that you have engaged in conduct that demonstrates that you "lack the willingness or ability to perform duties or responsibilities to the University, or that otherwise serves as a basis for disciplinary action," that your tenure should be revoked, and that you should be dismissed from employment with the University for cause.

I will be providing a copy of this letter to the Chancellor through the Provost, together with my recommendation that your employment with the University be ended. I reserve the right to supplement the reasons stated in this letter if warranted based on the facts. Likewise, I reserve

the right to supplement the supporting documentation if additional supporting material for this recommendation is located.

As we discussed in our meeting, you are not being suspended from employment at the present time. While this matter is pending, you are expected to perform the duties and responsibilities of your faculty position in the Department of Political Science. However, in our July 3, 2025, meeting, you were instructed to suspend your travel, that your travel card would be suspended as well as your access to support funding. I recently learned that you planned to travel to a conference March 17-22, 2026, and that you had requested travel funds. On January 26, 2026, I reminded you that you could not travel on University business. I, again, restate that your suspension of travel, travel card, and funds access remains in place.

I want to emphasize that you must not retaliate against any colleague for notifying the University of concerns or participating in an investigation into your apparent violation of University policies. Any act of retaliation may constitute additional grounds for discipline.

I deeply regret needing to take this action, bnt I believe you have left the College with no option but to act, in light of the Internal Audit findings detailing the serious and repeated nature of your actions.

In addition, in your appointment letter as Director of the African and African American Stndies program dated January 9, 2024, it states:

*[C]consistent with Board of Trustees Policy 405.1.II.B., directors serve at the pleasure of the dean, and I reserve the right to end your service as director at any time prior to the expiration of the term, at my discretion based on the best interests of the college and the university. In such an event, you will return to a faculty position, with standard duties assigned by your department chair, and your total compensation will revert to your nine-month academic salary with standard benefits as described above.*

As discussed in our meeting on March 11, 2026, I have lost confidence in your leadership as director, and I have decided it is necessary in the best interests of the African and African American Studies Program and Fulbright College for your service as Director of the African and African American Studies Program to end, effective immediately. Consistent with the terms of your appointment and applicable University policies, you will immediately return to your 9month academic appointment, with corresponding adjustments to your compensation, including the removal of your administrative stipend. Consistent with University policy, moving forward your workload will be determined by the Chair of the Department of Political Science while my recommendation for dismissal is considered.

Sincerely,

Brian Raines, Dean

cc:  Dr. Bill Schreckhise, Chair, Political Science

Attachments (sent via Box link)

Old Main 525 • Fayetteville, AR 72701 • 479-575-3684 • fulbright.uark.edu
*The University of Arkansas is an equal opportunity institution.*