

UNIVERSITY OF ARKANSAS SYSTEM

*Internal Audit*

March 9, 2026

TO MEMBERS OF THE AUDIT AND
 FISCAL RESPONSIBILITY COMMITTEE
    Scott Ford, Chair
    Ted Dickey
    Ed Fryar
    Jeremy Wilson
    Chair Randy Lawson, Ex-Officio

**SUBJECT:**    **University of Arkansas, Fayetteville Fulbright College Travel (26-03) Executive Summary**

Dear Committee Members:

We have completed an internal audit of certain expenditures in Fulbright College at the University of Arkansas, Fayetteville (University) based on receiving a notification from the University's management in accordance with A.C.A. § 25-1-124.

The purpose of this audit was 1) to determine compliance with the University of Arkansas, Fayetteville's internal controls in place to detect fraud, waste, and abuse, 2) to report on any apparent losses to the University, and 3) to determine compliance with University of Arkansas Board of Trustees policies, University of Arkansas Systemwide and campus policies and procedures, and applicable federal and state laws.

The internal audit report documents an apparent loss of $48,344.26 to the University.

The enclosed report contains seven recommendations in the key areas of travel expenses and budget internal controls. I am available at your convenience to discuss any aspect of the audit report and/or audit work performed.

Sincerely,

Laura L. Cheak
Chief Audit Executive

2404 North University Avenue / Little Rock, Arkansas 72207-3608 / 501-686-2901
University of Arkansas, Fayetteville / University of Arkansas at Little Rock / University of Arkansas at Pine Bluff
University of Arkansas for Medical Sciences / University of Arkansas at Monticello/ Division of Agriculture / Criminal Justice Institute
Arkansas Archeological Survey/ Phillips Community College of the University of Arkansas / University of Arkansas Community College at Hope-Texarkana
University of Arkansas Community College at Batesville / Cossatot Community College of the University of Arkansas
University of Arkansas Community College at Morrilton / University of Arkansas at Fort Smith
University of Arkansas -- Pulaski Technical College / University of Arkansas Community College at Rich Mountain
Arkansas School for Mathematics, Sciences and the Arts / University of Arkansas Clinton School of Public Service / University of Arkansas System Grantham
University of Arkansas East Arkansas Community College

*The University of Arkansas is an equal opportunity/affirmative action institution.*

| 26-03 UAF Fulbright College Travel | Audit Date: March 9, 2026 | |
|---|---|---|
| RECOMMENDATIONS | RESPONSIBLE MANAGEMENT | RECOMMENDATION STATUS |
| KEY CONTROL AREA Travel Expense Testing | | |
| 1. Seek reimbursement from the Associate Professor for the $48,344.26 apparent loss identified in the audit. | Dean, Fulbright College of Arts & Sciences | 1. March 31, 2026 |
| 2. Attend University Travel Policy training to enhance compliance. | Dean, Fulbright College of Arts & Sciences | 2. Implemented |
| 3. Invoice the Associate Professor the $117.79 of excess reimbursement identified in the audit. | Dean, Fulbright College of Arts & Sciences | 3. March 31, 2026 |

2

| RECOMMENDATIONS | RESPONSIBLE MANAGEMENT | RECOMMENDATION STATUS |
|---|---|---|
| 4. Require adequate business justification documentation that determines how it relates to the approved scope of work, objectives of the sponsor, and expected output, and is compliant with IRB approved protocol(s) if applicable. | Dean, Fulbright College of Arts & Sciences | 4. June 30, 2026 |
| 5. Require the Official Function Form and itemized receipts for meals charged for more than one guest in accordance with the University Travel Policy. | Dean, Fulbright College of Arts & Sciences | 5. Implemented |
| **KEY CONTROL AREA**<br>**Budget Internal Controls** | | |
| 6. Require ledger account line item budget proposals and justifications for all cost centers to be tracked and monitored in Workday. | Dean, Fulbright College of Arts & Sciences | 6. July 31, 2026 |

3

| RECOMMENDATIONS | RESPONSIBLE MANAGEMENT | RECOMMENDATION STATUS |
|---|---|---|
| 7. Evaluate the federal funds related to the apparent loss identified in the audit to determine whether the funds should be returned to the National Science Foundation. | Dean, Fulbright College of Arts & Sciences | |

4



# Compliance Internal Audit Report

### University of Arkansas, Fayetteville
### Fulbright College Travel
### 26-03

2404 North University Avenue / Little Rock, Arkansas 72207-3608 / 501-686-2901
University of Arkansas, Fayetteville / University of Arkansas at Little Rock / University of Arkansas at Pine Bluff
University of Arkansas for Medical Sciences / University of Arkansas at Monticello/ Division of Agriculture / Criminal Justice Institute
Arkansas Archeological Survey/ Phillips Community College of the University of Arkansas / University of Arkansas Community College at Hope-Texarkana
University of Arkansas Community College at Batesville / Cossatot Community College of the University of Arkansas
University of Arkansas Community College at Morrilton / University of Arkansas at Fort Smith
University of Arkansas – Pulaski Technical College / University of Arkansas Community College at Rich Mountain
Arkansas School for Mathematics, Sciences and the Arts / University of Arkansas Clinton School of Public Service / University of Arkansas Grantham
University of Arkansas East Arkansas Community College

*The University of Arkansas is an equal opportunity/affirmative action institution*

# Table of Contents

|     |     |     |
| --- | --- | --- |
| I. | Summary Schedule of Compliance Internal Audit | 2 |
| II. | Scope | 3 |
| III. | Findings and Recommendations | 3 |
| | A. Loss Timeline | 3 |
| | B. Travel Expense Testing | 8 |
| |   1. Apparent Loss | 8 |
| |   2. University Travel Policies and Procedures | 10 |
| |   3. Business Justification Documentation | 11 |
| |   4. Meal Receipts | 12 |
| | C. Budget Internal Controls | 12 |
| IV. | Conclusion | 14 |

**Summary Schedule of**
**Compliance Internal Audit**

**University of Arkansas, Fayetteville**
**26-03 Fulbright College Travel**

## Part I. Communications

| | | | | |
|---|---|---|---|---|
| Requested by: Management | August 1, 2025 | | | |
| Date allegations provided to Arkansas Legislative Audit: | June 30, 2025 | | | |
| Allegation related to unauthorized disbursements of public funds | ✓ | Yes | | No |
| Allegation related to theft or misappropriation of public funds or property | ✓ | Yes | | No |
| Source of University funds audited | Federal Grant and Gift Funds | | | |

## Part II. Summary of Apparent Loss

| | | | | |
|---|---|---|---|---|
| Apparent loss identified by audit | $48,344.26 | | | |
| Reimbursement received during audit | $0.00 | | | |
| Total Apparent loss remaining | $48,344.26 | | | |
| Apparent loss identified is $25,000 or more | ✓ | Yes | | No |
| Apparent loss is less than $25,000 but more than $5,000 | | Yes | ✓ | No |
| Apparent loss is less than $5,000 but more than $1,000 | | Yes | ✓ | No |
| Apparent loss is less than $1,000 | | Yes | ✓ | No |

## Part III. Internal Controls

| | | | | |
|---|---|---|---|---|
| Key control weakness reported to management | ✓ | Yes | | No |

## Part IV. Compliance

| | | | | |
|---|---|---|---|---|
| Compliance issues reported to management | ✓ | Yes | | No |

2

## *Scope*

The scope of our audit included the period of July 1, 2024, through July 31, 2025, and any other periods considered necessary to achieve the objectives of the audit. The purpose of this audit was 1) to determine compliance with the University of Arkansas, Fayetteville's (University) internal controls in place to detect fraud, waste, and abuse, 2) to report on any apparent losses to the University, and 3) to determine compliance with University of Arkansas Board of Trustees (Board) policies, University of Arkansas (UA) Systemwide and campus policies and procedures, and applicable federal and state laws. It is the responsibility of management to comply with Board policies, campus policies and procedures, and applicable federal and state laws. Our responsibility is to express a conclusion on management's compliance with those policies, procedures, and regulations.

Our audit was conducted in accordance with the *Global Internal Audit Standards* issued by The Institute of Internal Auditors. These standards require that we plan and perform our audit to obtain reasonable assurance that the University was in compliance with Arkansas Code Annotated § 25-1-124. We believe our audit provides a reasonable basis for the conclusion stated in this report.

## *Findings and Recommendations*

### *Loss Timeline*

In accordance with Arkansas Code Annotated (A.C.A) § 25-1-124, the University notified Arkansas Legislative Audit (ALA) and Internal Audit (IA) on June 30, 2025, of an apparent loss of public funds of $1,000 or more related to potential fraudulent charges on a payment card which was a travel card (T-Card) associated with Fulbright College. We discussed the allegations with University leadership, Fulbright College management, and the Office of General Counsel.

Fulbright College management reported they had identified expense reports that were submitted by an Associate Professor that exceeded the account balance of the funding worktag. The expense reports covered a combined trip from May 31, 2025 through July 13, 2025. One expense report showed charges on June 7, 2025 that were for an event that happened on the same day and time as the Associate Professor's wedding which the approver, the Department Chair, was invited. He received wedding communication that stated the reception was on June 7, 2025 at 3:30pm in Columbia, SC at the Gala Event Center. Fulbright College management noted the Gala Event Center rental, charges from Tupelo Honey for catering, and other travel related charges from this time period were all expensed to the University. The Gala Event Center invoice was for the hours of 11am-6pm and included a charge for a floral backdrop. The Tupelo Honey invoice was for the hours of 1:15pm-6:30pm. After further investigation, they obtained a screenshot of the Associate Professor's social media post updating the profile picture on June 8, 2025 of him and his wife dancing in wedding attire evidenced by other social media posts, in front of a wall with a distinctive marble pattern and chairs with a distinctive design with apparent wedding attendees in the background. He reserved lodging from June 7-10, 2025 at a VRBO "Pawleys Plantanion Villa" at Pawleys Island, SC, which is almost three hours away from Columbia, SC. The supporting documentation states the lodging was for three nights with two adults. On June 30, 2025, Fulbright College reported their findings to University administration. The Associate Professor began his employment with the University on August 19, 2019, as an Instructor. On August 17, 2020, he became an Assistant Professor and on February 1, 2024, he became the Director of African and African American Studies. On February 23,

3

2023, the University provided the Associate Professor a retention offer with combined commitments from the Diane D. Blair Center of Southern Politics and Society (Blair Center) and the Political Science Department which he accepted. On August 11, 2025, he was promoted to Associate Professor. On February 7, 2025, the Associate Professor completed a T-Card request in Workday accepting all cardholder responsibilities, including burden of proof and accountabilities. He was issued a Bank of America T-Card with a single transaction limit and a monthly credit limit of $10,000.

The Associate Professor was awarded a three year National Science Foundation (NSF) grant on June 1, 2022 which was a collaborative grant with Georgia State University, North Carolina Central University, Howard University, and Emory University. Georgia State University employed the lead Principal Investigator (PI) who later moved to the University of Maryland. This NSF grant, as well as the University, requires that any research involving human subjects must have an active Institutional Review Board (IRB) protocol approval. On February 22, 2024, a renewal reminder was sent to the Associate Professor about his IRB protocol which he did not renew, and the protocol expired April 20, 2024. He did not have an active IRB protocol from this date until September 19, 2025 with the University which included the entire audit scope.



| Date | Event |
|---|---|
| February 23, 2023 | Associate Professor provided retention offer |
| April 20, 2024 | Associate Professor's IRB protocol expired |
| February 7, 2025 | Associate Professor issued T-Card and certified responsibilities |
| April 25, 2025 | NSF grant terminated |
| June 7-10, 2025 | Associate Professor's wedding day and related activities |
| June 23, 2025 | Fulbright College identified expense reports for apparent wedding related activities |
| June 30, 2025 | Apparent misappropriation of public funds reported to ALA and IA |
| July 3, 2025 | Fulbright College met with Associate Professor concerning expense reports, requested research evidence, suspended travel |
| July 11, 2025 | Fulbright College met with Associate Professor to discuss additional evidence |
| July 13, 2025 | Associate Professor returned to Fayetteville from South Carolina |
| August 1, 2025 | Fulbright College requested IA review the apparent wedding related transactions |
| August 4, 2025 | IA notified University of audit |
| August 24-25, 2025 | IA performed site visit to various locations in South Carolina |
| October 1, 2025 | IA interviewed the Associate Professor and requested responses to questioned costs and research evidence |
| October 15, 2025 | Associate Professor provided responses to questioned costs |
| October 22, 2025 | IA met with Fulbright College and requested responses to questioned costs |
| November 4, 2025 | Fulbright College provided responses to questioned costs |

4



On July 3, 2025, Fulbright College management met with the Associate Professor to inquire about the charges for the June 2025 trip. He told Fulbright College management he was there to conduct a focus group of 75 research participants after his wedding on June 7, 2025 and before his wedding reception that was planned to be at the United House of Prayer (UHOP), but was actually held at a community room in the housing complex his wife lives in. The Associate Professor also stated he was interviewing subjects during his time at Pawleys Island, SC. Fulbright College management suspended his T-Card and all travel on July 3, 2025. Fulbright College management requested evidence of research participant interviews and related notes. The Associate Professor provided four pages of handwritten notes on hotel stationary titled initial notes from Columbia and Pawleys Island by email on the same day requested. Fulbright College management determined the notes to be insufficient. On July 11, 2025 Fulbright College management met with the Associate Professor again where he stated he actually did not have a wedding reception. They presented him with the apparent wedding profile picture, he stated the picture was taken in the downstairs of the UHOP in Columbia, SC, the church where they got married.

On August 1, 2025 Fulbright College management requested IA to review the use of University funds by the Associate Professor for travel during FY2025 and the beginning of FY2026, including but not limited to, in connection with any events and activities surrounding his wedding on June 7, 2025, in Columbia, SC. On August 4, 2025, we notified University management of an internal audit of the reported issues.

On August 24, 2025, IA performed a site visit in Pawleys Island, SC, and located the VRBO property where the Associate Professor stayed in from June 7-10, 2025. We noted the address was located in an upscale gated and guarded community, Pawleys Plantation Golf and Country Club. IA then travelled to Pawleys Raw Bar, one of the locations the Associate Professor dined at using his T-Card with a receipt that stated two guests. The waitstaff who served the Associate Professor stated they remembered serving the Associate Professor and that he dined with a female guest. The Associate Professor told Fulbright College management only he consumed all the meals listed on submitted receipts. We noted multiple meal receipts with two guests (one with three), two drinks, two appetizers, and two entrees charged to the University.

On August 25, 2025, IA performed a site visit in Columbia, SC and met with management at the Gala Event Center who stated they set up events in advance and were not present at the actual event held on June 7, 2025. We were able to identify and match the faux marble wall and chairs in the Gala Event Center to the wall with a distinctive marble pattern and chairs with a distinctive design in the photo of the Associate Professor at his apparent reception. IA travelled to the UHOP where the wedding was held. The Associate Professor reported in his second meeting with Fulbright College management that the photo was taken impromptu downstairs at the UHOP and that there was actually no wedding reception which was inconsistent with his original response. He provided apparent website pictures of a food service area. We noted the area matched the pictures and did not appear sufficient to host a reception of over 50 people. IA travelled to the Columbia, SC Tupelo Honey restaurant, the catering company for the event. Management from Tupelo Honey that were present and worked the event on June 7, 2025 at the Gala

5

Event Center stated the event was a wedding reception for the Associate Professor and his wife. They described witnessing wedding attire, the bride and groom's family assisting with food service, wedding related announcements, and music over the sound system. It should be noted that the Associate Professor signed and submitted a University Official Function Form for the Gala Event Center charges certifying the event as a research related focus group. The description included approximately 75 research participants whose identities must remain confidential.

Other wedding related issues noted during the audit were as follows. On June 2, 2025, the Associate Professor sent an email to decline a meeting that was scheduled for June 10, 2025 stating "i will be on my honeymoon. try the next week." On June 3, 2025, the Associate Professor sent an email to a group discussing scheduling a meeting about an issue and stated "I'm available next Wednesday. Got a wedding and honeymoon this week." On June 12, 2025, the Associate Professor left a review on the described VRBO's website that stated "Some properties feel like hotels. This property feels like home. Tracie provided a spectacular stay for us newlyweds. She was attentive and responsive. We wanted a pool, but easily discovered no reason to leave. We will be back." The review also detailed that this review was associated with his three-night stay in June 2025.

During our review of all the Associate Professor's Columbia, SC related travel and other FY2025 travel, we noted on multiple trips from September 2024 to June 2025, Uber receipts where he travelled primarily to a local UHOP. IA obtained documentation through email communications that the Associate Professor holds multiple positions within the UHOP including an Elder, Local Hotel Coordinator, and Chair of Chattanooga District. The Chattanooga District includes Chattanooga, TN, Hattiesburg, MS, New Orleans, LA, Anniston, AL, and Marion, AR. Through review of his FY2025 expense reports, we noted he travelled to three of the locations in the District he serves as Chair including New Orleans (November 11–17, 2024), Chattanooga (January 17–19, 2025), and Hattiesburg (March 7–9, 2025). The Associate Professor helped organize hotel rooms for UHOP leaders in Memphis, TN on the same dates and at the same hotel as two Memphis trips during FY2025. There were numerous other emails describing UHOP activities on dates of travel charged to the University. We observed publicly available webpages to identify that four trips charged to the University appeared to be during the same time and place as UHOP Holy Convocations or other significant events. These trips included Augusta, GA (September 22–30, 2024), Charlotte, NC (October 3–7, 2024), Miami, FL (March 22–31, 2025), and Washington DC (May 21–26, 2025). We noted the Associate Professor's father stayed in a hotel in Miami, FL charged to the University, where it appeared he checked into the hotel room on March 19, 2025 three days before the Associate Professor travelled to Miami from the conference he was attending in New Orleans, LA.

The Associate Professor took a trip to Charlotte, NC, and multiple other locations, including Columbia, SC from December 13, 2024, to January 7, 2025, when he then left to go to Puerto Rico for a conference. It appeared he rented a car for the entire trip, charged multiple nights in hotel rooms and meal per diem reimbursements for each day including the Christmas and New Year holidays. In the memo of the flight purchased for this trip it stated "Dr. Baptist is leaving from CLT to Puerto Rico in early January on an unrelated trip. He'll be traveling on personal time in the meantime, so a one-way ticket was all that was necessary."

On October 1, 2025, we interviewed the Associate Professor with his attorney present, to discuss questioned costs related to trips and transactions noted during the audit. A member of the University's Office of General Counsel was also present. During this meeting, we reviewed each questioned trip (15

6

trips), along with related concerns and audit observations. We provided a detailed worksheet and requested responses for each day of travel to substantiate the business purpose of the questioned costs. IA verbally requested the Associate Professor provide any existing research related documentation from the trips and followed with an email requesting any level of corresponding supporting documentation (notes, transcriptions, publications, surveys, focus groups, names etc.) to support the amounts charged to the University.

On October 15, 2025, the Associate Professor submitted a written response for each day of the questioned travel charged to the University. For most line items, the response stated in part the Associate Professor conducted research that involved collecting primary data through focus groups, interviews, and observation as a participant observer and that all documents were approved and on file with the IRB. Further, all the resulting data are strictly protected by the Common Rule, federal privacy laws, and IRB intellectual property guidelines. Publications will only commence upon the study's completion, which is estimated to take an average of one to four years. Related to the wedding trip, he stated, "While hosting a research event on my wedding day seems irregular, the event was conducted as scheduled. Our original digital invitation malfunctioned, forcing us to send corrective information via text message. The initial venue, Tupelo Honey, was changed, and we informed the Gala Event Center of the modified nature of our gathering after the first week of May. We traveled directly from the church to the Gala Event Center, explaining the appearance of a reception, as we were still wearing our wedding attire. During scheduled breaks, music and dancing occurred while we finalized cleanup of the venue. The photo in question was not taken by me but was a Facebook tag of an image that was altered with filters and photo manipulation. The researcher and his wife took similar photos at the church near the baptism pool and conference room areas. I also confirm that no honeymoon was taken." At the time, the Associate Professor did not provide supporting documentation as requested.

It should be noted, the Associate Professor's response to the wedding trip differs from what was originally provided to management. Additionally, the audit evidence requested and/or obtained to date does not support his claim and any level of commingling University business, including research, with personal wedding related activities should be considered inappropriate and a misappropriation of public funds.

On October 22, 2025, IA provided Fulbright College management with the Associate Professor's responses as well as a description of the audit evidence obtained to support the questioned trips and our conclusions related to the wedding activity. We requested Fulbright College management consider the responses and review the UHOP related trips identified during the audit to determine if they approve them as research and/or business related expenses for the University.

On November 4, 2025, Fulbright College management stated they do not approve of the UHOP questioned trips as research and/or business related expenses for the University due to the lack of documentation. They stated, "After consultation with campus officials responsible for IRB and research compliance, we determined that there are no applicable IRB oversight requirements, provisions of the Common Rule, or federal privacy restrictions that would prohibit the disclosure of aggregate and anonymized materials related to research projects in connection with this internal audit that would serve as both documentation of research activity as well as support for travel expenses." Additionally, no conflict-of-interest and commitment disclosures were made by the Associate Professor regarding external affiliations and leadership roles with UHOP. Related to the wedding trip, there was at a minimum an extraordinary,

7

improper, and undisclosed commingling of business and personal purposes for the claimed travel expenses.

We discussed the audit results with University leadership and the Office of General Counsel. It was universally agreed we provide a final opportunity for the Associate Professor to make immediately available any existing research related documentation from the questioned travel which was again formally requested on December 5, 2025. On December 15, 2025, the Associate Professor's attorney provided 108 documents that were described as a complete file for review as full compliance and in good faith with the request to make immediately available any existing research related documentation connected to the questioned travel. IA tested the file contents and consulted with a data professional who determined the data appeared to be generated with Artificial Intelligence (AI). We requested Fulbright College management review the data to determine if it adequately supported the questioned trips as research and/or business related expenses for the University.

On February 6, 2026, Fulbright College management stated they do not approve of the questioned trips after their review of the data. Based on the analysis conducted by the Department of Political Science, as supplemented by the analysis by the Provost's Office, Academic Initiatives and Integrity Office, Research Security/Information Technology Services, and consistent with the concerns identified by IA, the College does not view the documentation furnished as valid evidence of research purpose. These concerns include but are not limited to the replication of identical responses, lack of reported interaction between participants, presence of unusually formal and polished language that lacks filler words, fragments, contractions and false starts, variance in British and American spellings, unusual data collection dates that occurred on major holidays, lack of summary participant data, and metadata indicating batch document creation.

*Travel Expense Testing*

**Apparent Loss**

We performed a detailed testing of travel expenses incurred by the Associate Professor for the alleged wedding related activities and other travel charged to the University for FY2025 and the beginning of FY2026. We identified 15 trips totaling $48,344.26 that appeared questionable as business related through interviews, observations, examination of source documents and email, as well as publicly available media sources, and discussions with University management. There was not sufficient evidence to support business related purpose. Our assessment was based on the following:

- The Associate Professor's spouse resides in Columbia, SC, where there appeared to be a lack of specific research purpose and/or valid supporting documentation.
- Verified through direct observation, third-party confirmations, examination of emails, and publicly available information, that the venue space, catering, lodging, and related travel expenses charged to the University for the South Carolina trips tested were for the Associate Professor's wedding related activities and/or visits to his spouse. These questioned trips totaled $16,960.42.
- Public information identified UHOP events were held on the same dates and locations as research trips charged to the University. Fulbright College management did not approve the UHOP related trips as research and/or business expenses for the University due to a lack of valid supporting

8

documentation and the non-disclosure of his affiliation and leadership roles with the UHOP. These questioned trips totaled $25,529.71.

- Workday expense reports tested for a trip during December 2024 and January 2025, which stated the Associate Professor was travelling on personal time for part of the trip; however, a rental car and meals for each day of the trip including the Christmas and New Year holidays were charged to the University. This questioned trip totaled $5,854.13.
- The locations and/or the stated purpose of the questioned trips did not align with the objectives stated in the grant agreement, IRB protocols, and/or supported funding for research activities.

Overall, we noted some trips could be traced to a business purpose and the trip was adjusted for only those expenses and/or portion of the trips that could not be validated as business related.

| # | City | State | Start Date | End Date | Apparent Loss |
|---|---|---|---|---|---|
| | **Columbia, SC Travel** | | | | |
| 1 | Columbia | South Carolina | 04/12/25 | 04/21/25 | $2,628.52 |
| 2 | Columbia | South Carolina | 05/08/25 | 05/09/25 | $609.18 |
| 3 | Columbia | South Carolina | 05/17/25 | 05/19/25 | $934.02 |
| 4 | Columbia<br>Pawleys Island | South Carolina<br>South Carolina | 06/04/25 | 07/13/25 | $11,229.02 |
| 5 | Columbia | South Carolina | 07/28/25 | 08/05/25 | $1,559.68 |
| | **Total Apparent Loss** | | | | **$16,960.42** |

| # | City | State | Start Date | End Date | Apparent Loss |
|---|---|---|---|---|---|
| | **UHOP Related and Other Travel** | | | | |
| 1 | Augusta | Georgia | 09/22/24 | 09/30/24 | $3,787.97 |
| 2 | Charlotte | North Carolina | 10/03/24 | 10/07/24 | $2,797.25 |
| 3 | New Orleans | Louisiana | 11/15/24 | 11/17/24 | $1,484.15 |
| 4 | Memphis | Tennessee | 11/27/24 | 12/01/24 | $3,016.74 |
| 5 | Charlotte<br>Durham<br>Columbia<br>Savannah<br>Augusta | North Carolina<br>North Carolina<br>South Carolina<br>Georgia<br>Georgia | 12/13/24 | 01/07/25 | $5,854.13 |
| 6 | Chattanooga | Tennessee | 01/17/25 | 01/19/25 | $627.54 |
| 7 | Hattiesburg | Mississippi | 03/07/25 | 03/09/25 | $1,774.85 |
| 8 | New Orleans<br>Miami | Louisiana<br>Florida | 03/22/25 | 03/31/25 | $6,090.45 |
| 9 | Washington | DC | 05/21/25 | 05/26/25 | $2,670.58 |
| 10 | Memphis | Tennessee | 05/31/25 | 06/04/25 | $3,280.18 |
| | **Total Apparent Loss** | | | | **$31,383.84** |

9

> **Recommendation: 1) We recommend University management, in consultation with the Office of General Counsel and/or UAPD, seek reimbursement from the Associate Professor for the $48,344.26 apparent loss identified in the audit.**

*Management's Response: 1) We agree. The Associate Professor was provided multiple opportunities by both Fulbright College and Internal Audit to explain and provide credible evidence of research purpose for the questioned travel. We agree that such evidence has not been provided for the remaining travel not validated by Internal Audit. The Associate Professor will be invoiced for the $48,344.26 apparent loss identified in the audit on or before March 31, 2026, following presentation of the audit report to the Board of Trustees. Following acceptance of the audit report, we will also refer the matter to the Washington County Prosecutor's Office for review.*

## University Travel Policies and Procedures

We performed an initial high-level review of all expense report transactions for the Associate Professor for FY2025 and beginning of FY2026 and judgmentally selected 342 transactions totaling $52,502 for detailed testing. We tested these transactions to determine if they met the following (if applicable); the transaction was properly initiated and approved with adequate supporting documentation, the transaction was allowable per University Travel Policy, and the travel was for apparent business purposes. We identified 51 potential non-compliant transactions totaling $7,453.51 for discussion with the University Travel Office. Subsequently, we identified 22 transactions totaling $2,697 that contained exceptions for various reasons. It should be noted that many of the transactions were also questioned costs that were identified as part of the apparent loss. See a summary of the testing results below.

- One transaction totaling $85 was set up with auto-renewal.
- One transaction totaling $110 was for a group meal with no itemized receipt provided.
- Four transactions totaling $128 for duplicate Uber trips submitted and approved twice for reimbursement. Three of the transactions were for justified business travel with excess reimbursement totaling $117.79. One transaction was identified as part of the apparent loss.
- One transaction totaling $105 where the University's contract price for a rental car was not used.
- Two transactions totaling $95 where both fuel and mileage were charged to the University for the same travel. These transactions were identified as part of the apparent loss.
- One transaction totaling $34 for fuel purchased with a stated purpose of fuel for a rental car, but no car appeared to be rented at the time of the purchase. This transaction was identified as part of the apparent loss.
- One transaction totaling $41 for fuel purchased at a location that the Associate Professor was not at the time. He acknowledged this was not his fuel charge as the fuel receipts were mixed up for the trip. This transaction was identified as part of the apparent loss.
- Two transactions totaling $782 were for the Pawleys Island VRBO rental that exceeded the nightly per diem maximum with no justification provided.

Nine of the 22 transactions identified in expense reports were not yet approved during the audit as they were on hold per the instruction of Fulbright College management. These transactions were identified as part of the apparent loss.

> *Recommendations: 2) We recommend Fulbright College management responsible for expense report approvals attend University Travel Policy training to enhance compliance. 3) The University Travel Office should invoice the Associate Professor the $117.79 of excess reimbursement identified in the audit.*

*Management's Responses: 2) We agree. All Fulbright College management responsible for expense report approvals have been directed to attend a mandatory University Travel Policy training. Fulbright College conducted five mandatory University Travel Policy trainings for expense report approvers—led by the University of Arkansas Director of Travel, Travel Card, and Reimbursement Services, which were held on January 13, 21 (morning and afternoon), 22, and February 4, 2026—with strong participation. College management is conducting targeted follow-up with any remaining approvers and will offer supplemental sessions as needed to ensure 100% completion. Fulbright College will also recirculate the requirements to all College staff by no later than June 30, 2026. We remain fully committed to supporting management and achieving full compliance. 3) We agree. The Associate Professor will be invoiced for the $117.79 excess reimbursement identified in the audit on or before March 31, 2026, following presentation of the audit report to the Board of Trustees.*

## Business Justification Documentation

The University Travel Policy for Traveling Using Federally Funded Grants requires compliance with Uniform Guidance on appropriate travel justification. This policy requires prior authorization with written justification for travel, such as a Spend Authorization. The policy also requires an employee to specify the type of research being conducted and how it relates to the grant. If they are collaborating with other researchers, who these researchers are and how the collaboration relates to the award and funding of the grant.

For the audit scope, we identified five trips charged to the Associate Professor's federally funded NSF grant that did not appear to meet these requirements. Additionally, we noted several expense reports submitted that lacked detail regarding the business purpose of the travel or the research activities performed that would justify the expenses. The lack of detail was a key factor in identifying the travel expenses as questioned costs that ultimately led to the apparent loss. Several of the expense report descriptions stated the travel was for focus group research or interviews; however, the reports did not include details such as the date, time, location of the focus groups or interviews, approved scope of work, IRB protocols, or expected output.

> *Recommendation: 4) For research related travel, we recommend Fulbright College management require adequate business justification documentation that determines how it relates to the approved scope of work, objectives of the sponsor, and expected output, and is compliant with IRB approved protocol(s) if applicable.*

*Management's Response: 4) We agree. On October 7, 2025, Fulbright College management communicated to all Fulbright Department Chairs and School Directors a requirement that all research-related travel requests and expense reports must include adequate business justification documentation. Effective June 30, 2026, this documentation must clearly demonstrate alignment with the approved scope of work, sponsor objectives, and applicable research protocols, and must be entered or attached in Workday for review and*

11

*approval. To foster campus-wide compliance and consistency, Fulbright College management would welcome guidelines and training on business purpose justification, ideally to be prepared and disseminated under the direction of the Division of Research and Innovation. However, by March 31, 2026, if campus-wide such resources are not yet available, Fulbright College will proactively create its own additional college-level resources and deliver additional training to its expense report approvers by no later than June 30, 2026.*

## Meal Receipts

During the detail testing of transactions, we observed and/or obtained five meal receipts charged to the Associate Professor's T-Card that appeared to have more than one guest without the required Official Function Form and itemized receipts. All group or student meals charged to the University T-Card require an itemized receipt per University Travel Policy. Due to the significant amount of individual meal charges, some of the receipts were obtained directly from the associated vendor to verify the itemized purchases. We noted the guest count was two or three per meal, they contained multiple drinks, appetizers, and entrees charged to the University. These meals were submitted as consumed only by the Associate Professor. Generally, meal receipts are not required by the Travel Office unless purchasing a business meal for a guest or purchasing a meal while traveling with a group. However, individual departments may require individual meal receipts. These meals were identified as part of the apparent loss.

> **Recommendation: 5) For individual travel, we recommend Fulbright College management require the Official Function Form and itemized receipts for meals charged for more than one guest in accordance with the University Travel Policy.**

*Management's Response: 5) We agree. On October 7, 2025, Fulbright College management communicated to all Fulbright Department Chairs and School Directors the University Travel Policy requirement that the Official Function Form, along with itemized receipts, must be submitted for any meal charged for more than one guest. To reinforce these requirements, Fulbright College conducted five mandatory University Travel Policy trainings for expense report approvers, with strong participation. College management is conducting targeted follow-up and will offer supplemental sessions as needed to ensure 100% completion. Fulbright College will also recirculate the requirements to all college staff by no later than June 30, 2026. We remain- fully committed to supporting management and achieving full compliance.*

### Budget Internal Controls

Based on our review of the grant agreement, award documentation, and related financial data, and interviews conducted with grant and gift administration, we determined that the Associate Professor exceeded the travel budget established for the NSF grant, AWD-101520: Collaborative Research: Transformative American Politics and related activities. He appears to have expended $31,160 in travel charged to the NSF Grant travel budget, which exceeded the budget by $18,510. He also expended $39,454 in travel expenses allocated to retention funding and an additional $20,596 in travel expenses in an account provided by the Blair Center. The NSF grant was terminated effective April 25, 2025.

12

| Source | Budget | | Actuals | | Remaining Balance | |
|---|---|---|---|---|---|---|
| **GR015559** | | | | | | |
| NSF Grant AWD-101520 | $ | 269,860.00 | $ | 209,056.00 | $ | 60,804.00 |
| Domestic Travel | $ | 12,650.00 | $ | 31,160.00 | $ | (18,510.00) |
| **DS77320** | | | | | | |
| Baptist Faculty Support (Retention Agreement, Blair Center) | $ | 40,000.00 | $ | 39,900.00 | $ | 100.00 |
| Travel Expenses** | $ | - | $ | 39,454.00 | $ | (39,454.00) |
| **DS77742** | | | | | | |
| Supplemental Support for NSF Grant (Blair Center) | $ | 8,000.00 | $ | 22,641.00 | $ | (14,641.00) |
| Travel Expenses** | $ | - | $ | 20,596.00 | $ | (20,596.00) |

*\*\*No budget line item, covers FY2024-2025*          *Covers grant period (2022-2025)*

The Blair Center provided retention funding, under the worktag DS77320, in the amount of $40,000, to support the Associate Professor's work. An additional $8,000 was added under worktag DS77742 to support expenses related to his NSF grant that were not funded by the sponsor. This funding was to be provided by the Blair Center and the worktag has since been used to cover the Associate Professor's travel and other expenditures pending a funding determination. The Blair Center worktags did not have an itemized budget by ledger account line item nor an associated budget justification to adequately determine if expenses aligned with research objectives and outcomes. Without these controls, it appeared approvers for expenses charged to the Blair Center did not have adequate knowledge of the purpose or business justification.

**Recommendations: 6) We recommend Fulbright College management require ledger account line item budget proposals and justifications for all cost centers to be tracked and monitored in Workday. 7) We recommend University management evaluate the federal funds related to the apparent loss identified in the audit to determine whether the funds should be returned to the National Science Foundation.**

*Management's Responses: 6) We agree. Beginning with the FY2027 budget cycle, the University will require all cost centers to submit budget proposals and justifications at the individual ledger account level. The FY2027 budget will be loaded into Workday no later than July 31, 2026. 7) We agree. Internal Audit identified an apparent loss of $13,932.57 related to a National Science Foundation (NSF) Collaborative Research award. The Office of Sponsored Programs reviewed the identified expenditures, and on February 17, 2026, returned $13,932.57 to the NSF award.*

# *Conclusion*

As a result of our audit, we noted an apparent loss totaling $48,344.26 related to travel expenses. In accordance with A.C.A. § 25-1-124, a copy of this report will be forwarded to Arkansas Legislative Audit.

## University of Arkansas System Internal Audit Department

| | |
|---|---|
| Chris Walker, CIA, CPA, CGMA | 03/09/2026 |
| Internal Audit Director | Date |

Traci Asher, CIA, CRMA
Senior Audit Manager

03/09/2026
Date

Anna Kate Geyer, CPA
Senior Auditor

03/09/2026
Date

14