**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

| | | |
|---|---|---|
| DR. NAJJA K. BAPTIST | ) | |
| | ) | |
| PLAINTIFF-COUNTERCLAIM DEFENDANT | ) ) ) | CASE NO. 5:26-cv-05077-DCF |
| | ) | |
| v. | ) | |
| | ) | |
| BOARD OF TRUSTEES OF THE UNIVERSITY OF ARKANSAS, acting for and on behalf of the University of Arkansas, Fayetteville | ) ) ) ) | JURY TRIAL DEMANDED |
| | ) | |
| DEFENDANT-COUNTERCLAIM PLAINTIFF | ) ) ) | |
| | ) | |
| BRIAN RAINES; CHARLES ROBINSON, in his official capacity only; INDRAJEET CHAUBEY, in his official capacity only; CALE FESSLER, in his official capacity only | ) ) ) ) ) ) | |
| | ) | |
| DEFENDANTS | ) | |

**DEFENDANTS' ANSWER AND DEFENDANT-COUNTERCLAIM PLAINTIFF BOARD
OF TRUSTEES' COUNTERCLAIMS**

**DEFENDANTS' ANSWER**

For their Answer to the Complaint for Damages, Declaratory Relief, and Injunctive Relief

of Plaintiff-Counterclaim Defendant Dr. Najja K. Baptist ("Dr. Baptist")(ECF No. 2), Defendant-

Counterclaim Plaintiff Board of Trustees of the University of Arkansas ("the Board"), and

1

Defendants Brian Raines ("Dean Raines"), Charles Robinson ("Chancellor Robinson"), Indrajeet Chaubey ("Provost Chaubey"), and Cale Fessler ("Dr. Fessler")[1] state:

1.       The Defendants deny Paragraph 1.

2.       The Defendants deny Paragraph 2 and state that Dean Raines's "version of events" was (and is) truthful. The Defendants further state that when Plaintiff filed a complaint an internal investigation was conducted and found that claims of discrimination and harassment against Dean Raines by Plaintiff were false.

3.       The Defendants deny Paragraph 3 and state that Dr. Baptist owes the Board a debt, that Dr. Baptist should be held liable to the Board for breach of his fiduciary duty of public trust, conversion of public funds, unjust enrichment, and fraud, that a judgment should be entered against Dr. Baptist and in favor of the Board that exceeds the amount required for diversity-of-citizenship jurisdiction in federal court for compensatory damages, punitive damages, prejudgment interest and post-judgment interest, and that also awards the Board all other further relief as the Court deems just and proper.

4.       The Defendants deny Paragraph 4.

5.       The Defendants deny Paragraph 5 and state that Dr. Baptist submitted insufficient and/or fabricated research materials as proposed documentation of research activity.

6.       With regard to Paragraph 6, the Defendants admit that Dr. Baptist seeks damages, declaratory, and injunctive relief and deny the remainder of the Paragraph. The Defendants deny all of Dr. Baptist's purported claims and state that Dr. Baptist is not entitled to any relief.

---

[1]The Board, Dean Raines, Chancellor Robinson, Provost Chaubey, and Dr. Fessler are collectively referred to as "the Defendants."

7.      With regard to Paragraph 7, the Defendants admit that Dr. Baptist is an adult citizen and resident of the State of Arkansas, that he has been employed by the University of Arkansas in Fayetteville Arkansas since on or about August 19, 2019, that he is—as of this writing—a tenured faculty member in the Department of Political Science at the University of Arkansas, Fayetteville, that he was previously the Director of the African and African American Studies Program ("AAST") at the University of Arkansas, Fayetteville, and that he is a Black man. The Defendants deny any allegations in the paragraph that are not specifically admitted.

8.      With regard to Paragraph 8, the Defendants admit that the University of Arkansas is a public institution of higher education created, organized, funded, and governed by and under the Constitution and laws of the State of Arkansas, including Ark. Code Ann. § 6-64-202. The University of Arkansas, Fayetteville, is a campus of the University of Arkansas that is located in Fayetteville, Arkansas. The University of Arkansas is governed by the Board, which has delegated certain governance authority to the campuses that make up the university system. The Defendants admit that, at the time of this writing, the University of Arkansas is Dr. Baptist's employer and state that he is required to perform various job duties at the University of Arkansas, Fayetteville. The Defendants deny any allegations in the paragraph that are not specifically admitted.

9.      With regard to Paragraph 9, the Defendants admit that Dean Raines has been the Dean of the Fulbright College of Arts and Sciences at the University of Arkansas, Fayetteville since on or about June 30, 2024. The Defendants admit that Dr. Baptist is suing Dean Raines in his individual capacity only for damages under 42 U.S.C. § 1983. The Defendants, including Dean Raines, deny all of Dr. Baptist's purported claims and also deny any allegations in the paragraph that are not specifically admitted.

10. With regard to Paragraph 10, the Defendants admit that Chancellor Robinson has served as Chancellor of the University of Arkansas, Fayetteville since on or about November 16, 2022. He served as Interim Chancellor from on or about August 9, 2021, until he was named Chancellor. The Defendants admit that Chancellor Robinson is sued in his official capacity only for prospective declaratory and injunctive relief. The Defendants, including Chancellor Robinson, deny all of Dr. Baptist's purported claims and also deny any allegations in the paragraph that are not specifically admitted.

11. With regard to Paragraph 11, the Defendants admit that Provost Chaubey has served as Provost and Executive Vice Chancellor for Academic Affairs of the University of Arkansas, Fayetteville, since on or about July 1, 2025. The Defendants admit that Provost Chaubey is sued in his official capacity only for prospective declaratory and injunctive relief. The Defendants, including Provost Chaubey, deny all of Dr. Baptist's purported claims and also deny any allegations in the paragraph that are not specifically admitted.

12. With regard to Paragraph 12, the Defendants admit that Dr. Fessler served as Associate Vice Chancellor of Financial Affairs at the University of Arkansas, Fayetteville, from on or about February 18, 2019, until he was promoted to Chief Financial Officer and Senior Associate Vice Chancellor of Financial Affairs on or about July 1, 2024. Dr. Fessler still serves in this role. The Defendants admit that Dr. Fessler is sued in his official capacity only for prospective declaratory and injunctive relief. The Defendants, including Dr. Fessler, deny all of Dr. Baptist's purported claims and also deny any allegations in the paragraph that are not specifically admitted.

13. The Defendants deny Paragraph 13.

14. The Defendants admit Paragraph 14.

15.    With regard to Paragraph 15, the Defendants admit that the Court has authority to award declaratory and injunctive relief, deny that Dr. Baptist is entitled to any relief, and deny any allegations in the paragraph that are not specifically admitted.

16.    With regard to Paragraph 16, the Defendants admit that venue is proper in the Western District of Arkansas and deny any allegations in the paragraph that are not specifically admitted.

17.    With regard to Paragraph 17, the Defendants admit that Plaintiff filed an EEOC Charge against the University.  The Defendants lack sufficient knowledge or information to form a belief about the truth of the remaining allegations in Paragraph 17 and therefore deny them.

18.    With regard to Paragraph 18, the Defendants admit that the EEOC issued a Determination and Notice of Rights on January 13, 2026, and that an authentic copy has been filed in this action as ECF No. 2-1. The Defendants deny any allegations in the paragraph that are not specifically admitted.

19.    The Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 19 and therefore deny them.

20.    The Defendants deny Paragraph 20.

21.    The Defendants deny Paragraph 21.

22.    The Defendants admit Paragraph 22.

23.    With regard to Paragraph 23, the Defendants admit the Board hired Dr. Baptist to a faculty position in the Department of Political Science at the University of Arkansas, Fayetteville effective on or about August 19, 2019, admit that Dr. Baptist's initial faculty position was instructor, admit that the Board promoted Dr. Baptist to assistant professor effective on or about August 17, 2020, admit that the Board appointed Dr. Baptist Director of AAST effective on

or about February 1, 2024, admit that the Board promoted Dr. Baptist to associate professor effective on or about August 11, 2025, admit that Dr. Baptist was removed as Director of AAST on or about March 12, 2026, and admit that Dr. Baptist has received tenure which became effective on or about August 11, 2025.

24.    The Defendants deny Paragraph 24.

25.    The Defendants deny Paragraph 25.

26.    With regard to Paragraph 26, the Defendants admit that Dr. Baptist submitted a request for accommodations under the ADA pertaining to stress in dealing with an employee that he supervised, which he later withdrew.  The Defendants deny any allegations in the paragraph that are not specifically admitted.

27.    The Defendants deny Paragraph 27.

28.    Defendants admit Paragraph 28.

29.    The Defendants deny Paragraph 29. The Defendants state that in the virtual meeting Dean Raines told Dr. Baptist that people in leadership or management in the college must manage stressful situations well and need to be the calmest people in the room.

30.    The Defendants deny Paragraph 30. The Defendants state that whether the plaintiff may have "understood" the remark as race-based is not the same as whether Dean Raines in fact made a discriminatory statement, which he did not.

31.    With regard to Paragraph 31, the Defendants admit that CJ Moseby, EO & Title IX investigator for the University of Arkansas, Fayetteville, interviewed Dr. Periloux Peay. The Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations that Dr. Peay is a research collaborator and faculty member at the University of Maryland and therefore deny them. The Defendants admit that Dr. Peay told Ms. Moseby that he

attended the Southern Political Science Association conference in Puerto Rico in January 2025. The Defendants admit that Dr. Peay told Ms. Moseby that he was seated about 10 feet from Dr. Baptist at a different table and saw Dr. Baptist in a virtual call with several University of Arkansas, Fayetteville faculty, including Dean Raines, but he did not recognize the others. The Defendants admit that Dr. Peay told Ms. Moseby that he did not know Dean Raines and had never met or spoken to him and only learned that it was Dean Raines on the call after Dr. Baptist told him once the meeting concluded. The Defendants admit that Dr. Peay told Ms. Moseby that he overheard what he described as a "problematic" comment made by Dean Raines during the call. The Defendants admit that Dr. Peay told Ms. Moseby that he did not recall the exact words. The Defendants admit that Dr. Peay told Ms. Moseby that he remembered it as something like "This is why people can't be trusted with leadership." The Defendants admit that Dr. Peay told Ms. Moseby that he interpreted Dean Raines's comment as being aimed at Dr. Baptist's leadership abilities. The Defendants state that Dr. Peay acknowledged that he had not heard the full context of the comment or the conversation. The Defendants deny the remainder of the paragraph.

32.    With regard to Paragraph 32, the Defendants admit that a memorandum from Ms. Moseby to Provost Chaubey dated October 28, 2025, states: "Though [Dr. Peay] didn't recall the exact words, he remembered it as something like 'This is why people can't be trusted with leadership'." The Defendants deny the remainder of the paragraph.

33.    With regard to Paragraph 33, the Defendants admit that on January 17, 2025, Dr. Baptist sent an email to Chancellor Robinson in which Dr. Baptist mentioned Dean Raines's alleged comment on the video call that Dr. Peay told Ms. Moseby that he had overhead. The Defendants also admit that, in his email to Chancellor Robinson, Dr. Baptist wrote, in part: "It is

particularly troubling to note that the Dean has made disparaging statements suggesting that Black faculty 'did not know how to handle stress[.]'" This written statement by Dr. Baptist is misleading because Dean Raines did not suggest that Black faculty do not know how to handle stress. Dean Raines told Dr. Baptist that people in leadership or management in the college must manage stressful situations well and need to be the calmest people in the room.

34. With regard to Paragraph 34, the Defendants admit that at 4:01 pm on July 11, 2025—which was after Dean Raines had met with Dr. Baptist earlier that day, as well as on July 3, 2025, to address whether Dr. Baptist had incurred University travel expenses without a sufficient business justification, through using a credit card that the University of Arkansas, Fayetteville, had issued to him under the Board's authority to use only for official business—Dr. Baptist submitted a report to the University of Arkansas, Fayetteville's Office of Equal Opportunity, Compliance, and Title IX alleging that Dean Raines had discriminated and retaliated against him. The Defendants state that Dr. Baptist's allegations against Dean Raines are false and deny any allegations in the paragraph that are not specifically admitted.

35. With regard to Paragraph 35, the Defendants admit that Drs. Baptist and Valanda met in-person with Dean Raines around January 22, 2025. The Defendants deny that Dean Raines used a patronizing or "father knows best" tone. The Defendants deny the remainder of the paragraph. The Defendants state that on December 9, 2024, Dean Raines recommended Dr. Baptist for promotion to Associate Professor with Tenure, and on March 11, 2025, Dean Raines appointed Dr. Baptist to the Sylvia G. Swartz Chair in Political Science from July 1, 2025, through July 1, 2026. The Defendants further state that on March 6, 2025, Dr. Baptist emailed then-current Provost Terry Martin, Dean Raines, and others, expressing thanks to the Dean's

Office and the Provost's office for support received by Dr. Baptist in addressing certain personnel matters.

36.     The Defendants deny Paragraph 36. The Defendants state that whether the plaintiff "experienced" conduct in a particular manner is not the same as whether such conduct was in fact "racially hostile, demeaning, and threatening to his position."

37.     The Defendants admit Paragraph 37.

38.     With regard to Paragraph 38, the Defendants admit that Dean Raines and others who worked in the Dean's office learned of Dr. Schreckhise's report to Associate Dean Schulte. The Defendants deny any allegations in the paragraph that are not specifically admitted.

39.     With regard to Paragraph 39, the Defendants admit that, following consultation with legal counsel, the University notified Arkansas Legislative Audit on June 30, 2025, of an apparent loss of public funds of $1,000 or more related to potential fraudulent charges on a payment card which was a travel card (T-Card) associated with Fulbright College within five business days of leaning of the apparent loss as required by Ark. Code Ann. § 25-1-124. The Defendants deny any allegations in the paragraph that are not specifically admitted.

40.     With regard to Paragraph 40, the Defendants admit that Dr. Baptist was invited to and attended a video meeting held via Teams on July 3, 2025, with Dean Raines; Dr. William ("Bill") Schreckhise, who serves as Chair of the Department of Political Science; Associate Dean Stephanie Schulte; and Assistant Dean Donna Johnson. The Defendants admit that, during this meeting, Dean Raines notified Dr. Baptist of concerns about his travel-related expenses and reimbursements, his research activity and IRB approvals, and other matters. The Defendants deny any allegations in the paragraph that are not specifically admitted.

9

41.     With regard to Paragraph 41, the Defendants again admit that, during the July 3, 2025, meeting, Dean Raines notified Dr. Baptist of concerns about his travel-related expenses and reimbursements, his research activity and IRB approvals, and other matters. The Defendants admit that some of these concerns were related to Dr. Baptist's June 7, 2025, wedding in Columbia, South Carolina and his honeymoon in Pawleys Island, South Carolina. The Defendants state that Dean Raines gave Dr. Baptist an opportunity to respond to these concerns, in the meeting and through follow-up communications. The Defendants deny any allegations in the paragraph that are not specifically admitted.

42.     With regard to Paragraph 42, the Defendants admit that—after Dr. Baptist was given an opportunity to respond to the concerns raised in the meeting of July 3, 2025—the University prohibited him from travelling on University business and from incurring charges on any University account except for appropriate and normal expenses related to student support in Fayetteville in his role as director of AAST that had been approved by Associate Dean Chris Schulte. The Defendants deny any allegations in the paragraph that are not specifically admitted.

43.     The Defendants deny Paragraph 43. Defendants state that Dr. Baptist was asked to provide contemporaneous documentation of research activity for the period of travel leading up to and including the date of the June 7, 2025, event at the Gala Center that occurred on the date of Dr. Baptist's wedding, and during Dr. Baptist's stay at a VRBO in Pawleys Island, South Carolina, June 7-10, 2025.  The Gala Center event occurred on the afternoon of June 7th, following the wedding and cost over $6,000, including facility rental and catering charges. Defendants state that, in response to those requests, Dr. Baptist produced four pages of handwritten notes on hotel stationery as the sole documentation. Dean Raines declined to receive newly prepared documentation that was not in existence or created at the time of the events in

10

question.  Defendants further state that Dean Raines wrote Dr. Baptist on July 3, 2025, stating "You provided photos of four pages of handwritten notes that you indicate were from June 7-10. Are there any additional records documenting the focus group, community meeting, or interview activity from June 7 and from the other days? If so, please provide those records."  No additional contemporaneous records documenting research activity were provided by Dr. Baptist in July in response to the requests for records.

44.    With regard to Paragraph 44, the Defendants admit that Plaintiff identified Dr. Joe Grant as a South Carolina Coordinator for recruiting focus group participants and that Dr. Grant had explained that a floral wall had been taken out and used by mistake. Dr. Baptist provided an email from Dr. Grant on July 4, 2025, which, among other things, addressed a supposed "emergency meeting" with Dr. Baptist in May to plan for the "June studies" and stating that a study at the Gala Center in Columbia was "unknown to me but will certainly be used in the future." The Defendants state that on July 3 Dean Raines had asked Dr. Baptist to explain why an "emergency meeting" had to be conducted in-person, in Columbia, South Carolina, approximately one month before Dr. Baptist's wedding in the same city, rather than by electronic means. The Defendants deny any allegations in the paragraph that are not specifically admitted.

45.    With regard to Paragraph 45, the Defendants admit that Dean Raines led a follow-up meeting on July 11, 2025, with Dr. Baptist that was also attended by Associate Dean David McNabb, and Assistant Dean Donna Johnson. The Defendants admit that Dr. Baptist denied wrongdoing. The Defendants further state that Dr. Baptist asserted that the handwritten notes were sufficient documentation, and that he couldn't conduct a focus group because participants would not give him consent. The Defendants deny the remainder of the paragraph.

46.    The Defendants deny Paragraph 46.

47.     The Defendants deny Paragraph 47.

48.     With regard to Paragraph 48, the Defendants admit that—after Dr. Baptist was given an opportunity to respond to the concerns raised in the meeting of July 3, 2025—the University prohibited him from travelling on University business and from incurring additional charges on any University account except for appropriate and normal expenses related to student support in Fayetteville in his role as director of AAST that had been approved by Associate Dean Chris Schulte. The Defendants deny the remainder of the paragraph.

49.     With regard to Paragraph 49, the Defendants state that Dean Raines instituted changes to adjust the reporting lines and bring more consistency to compensation arrangements for area studies directors. The Defendants deny any allegations in the paragraph that are not specifically admitted.

50.     With regard to Paragraph 50, the Defendants admit that on October 28, 2025, following a detailed internal investigation, the University's Office of Equal Opportunity, Compliance, and Title IX issued a written Memorandum of Determination concluding that Dean Raines had not violated the University's policy prohibiting discrimination (including discriminatory harassment) in employment, education, programs, and services, which is known as Fayetteville Policies and Procedures 214.1. The Defendants admit an authentic copy of the October 28, 2025, Memorandum of Determination has been filed in this action at ECF No. 2-2. The Defendants deny the remainder of the paragraph.

51.     With regard to Paragraph 51, the Defendants admit that EO & TIX Investigator CJ Moseby concluded that Dr. Baptist's race-discrimination and retaliation allegations were unfounded and admit that Investigator Moseby issued the October 28, 2025, Memorandum of

Determination in which she explained the reasons for her conclusion. The Defendants deny the remainder of the paragraph.

52.     With regard to Paragraph 52, the Defendants admit that in the October 28, 2025, Memorandum of Determination Investigator Moseby recommended that Dr. Baptist be reminded of the University's ethical-reporting obligations, admit that Dr. Baptist's conduct needed correction, and deny that Dean Raines's conduct needed correction. The Defendants deny any allegations in the paragraph that are not specifically admitted.

53.     The Defendants deny Paragraph 53 and state that no retaliation occurred.

54.     With regard to Paragraph 54, the Defendants admit that the University's July 31, 2025, Summary of Information for Referral to Internal Audit identified concerns about Dr. Baptist's completed and proposed expenditures of $30,135.84 related to his travel to and activities in South Carolina. The Defendants admit that the University's July 31, 2025, Summary of Information for Referral to Internal Audit stated, "Our initial inquiry suggests these expenses merit further review[.]" The Defendants admit that an authentic copy of the University's July 31, 2025, Summary of Information for Referral to Internal Audit has been filed in this action at ECF No. 2-3. Defendants further state that in his referral of the matter to Internal Audit dated August 1, 2025, Dean Raines stated:

> [W]e are requesting Internal Audit to review the use of University funds by Dr. Najja Baptist for travel during Fiscal Year 2025 and the beginning of Fiscal Year 2026, including, but not limited to, in connection with any events and activities surrounding his wedding on June 7, 2025, in Columbia, South Carolina.

The Defendants deny any allegations in the paragraph that are not specifically admitted.

13

55.     With regard to Paragraph 55, the Defendants admit that the internal audit report dated March 9, 2026, reported an apparent loss of $48,344.26 to the University. The Defendants deny any allegations in the paragraph that are not specifically admitted.

56.     With regard to Paragraph 56, the Defendants admit:

a)     In an email dated May 29, 2025, Dr. Baptist asked Grace Gierach, who is employed as a business services/program specialist at the University of Arkansas, Fayetteville, to fill out an Official Function Form on his behalf;

b)     A true and correct copy of Dr. Baptist's May 29, 2025, email to Ms. Gierach is attached as Defendants' Exhibit 5;

c)     In his May 29, 2025, email to Ms. Gierach, Dr. Baptist stated:

> Also, smart carte does not give receipts for carts. Please fill out the form on my behalf.
>
> Justification for Event Expenses
>
> The expenditures of $1,600 covers the rental of the Gala Event Center as the venue and $500 for catering services provided by Tupelo Honey Kitchen for an upcoming focus group and community meeting. The Gala Event Center was selected due to its accessible location, appropriate capacity, and necessary amenities to facilitate productive discussions and community engagement. Tupelo Honey Kitchen was chosen for their quality catering, which will ensure attendees are comfortably nourished and engaged throughout the event. These purchases are essential to creating a professional, welcoming environment that encourages meaningful participation and gathers valuable input from research subjects who are community members.

Defendants' Exhibit 5;

d)     Ms. Gierach filled out the Official Function Form on Dr. Baptist's behalf;

e)     A true and correct copy of the Official Function Form is attached as Defendants' Exhibit 6;

f)    Ms. Gierach used information provided by Dr. Baptist to fill out the Official Function Form;

g)    Dr. Baptist signed the Official Function Form after Ms. Gierach filled it out;

h)    The Official Function Form stated:

> Dr. Baptist will host an upcoming focus group and community meeting for his work in the Blair Center. The Gala Event Center was selected due to its accessible location, capacity, and amenities to facilitate productive discussions and community engagement. This event will create a professional, welcoming environment that encourages meaningful participation and gathers valuable input from research subjects.

Defendants' Exhibit 6;

i)    The Official Function Form indicated that attendees at the focus group and community meeting would include Dr. Baptist and approximately 75 research participants, Defendants' Exhibit 6;

j)    The Official Function Form has a blank for "Dates of Event" that was filled in with "6/7/25", Defendants' Exhibit 6;

The Defendants deny any allegations in the paragraph that are not specifically admitted. The Defendants state that these actions by Dr. Baptist constitute breaches of his fiduciary duty of public trust, unjust enrichment, conversion of public funds for Dr. Baptist's personal use, and fraud.

57.    With regard to Paragraph 57, the Defendants admit that an authentic copy of the University's July 31, 2025, Summary of Information for Referral to Internal Audit has been filed in this action at ECF No. 2-3. The Defendants admit that Dr. Baptist represented that he would be

traveling to conduct research for the Blair Center, and admit that the Official Function Form

signed by Dr. Baptist stated:

> Dr. Baptist will host an upcoming focus group and community meeting for his work in the Blair Center. The Gala Event Center was selected due to its accessible location, capacity, and amenities to facilitate productive discussions and community engagement. This event will create a professional, welcoming environment that encourages meaningful participation and gathers valuable input from research subjects.

Defendants' Exhibit 6. The Defendants deny any allegations in the paragraph that are not

specifically admitted.

58.    With regard to Paragraph 58, the Defendants state that during the July 3, 2025,

meeting Dr. Baptist confirmed that there had been an actual focus group (and community

meeting) held, and state that during the July 11, 2025, meeting Dr. Baptist once again confirmed

that there had been a focus group. The Defendants admit that the Summary of Information for

Referral to Internal Audit dated July 31, 2025, correctly indicated that during the July 11, 2025,

meeting, Dr. Baptist—in contradiction to his earlier statements—said this was not focus group

but a group of older people concerned about the political environment who did not want to be

identified. The Defendants deny any allegations in the paragraph that are not specifically

admitted.

59.    With regard to Paragraph 59, the Defendants admit that the Summary of

Information for Referral to Internal Audit dated July 31, 2025, indicated that Dr. Baptist

identified an email from a purported research participant and an email from an individual who

identified himself as "Joseph M. Grant, PhD," who—among other things—wrote that he "was

pleased to serve as the South Carolina coordinator for recruiting subjects to participate in the

16

focus groups" and "Our study, at the Gala Event Center, was unknown to me but will certainly be used in the future." The Defendants deny the remainder of the paragraph.

60.     With regard to Paragraph 60, the Defendants admit that the Summary of Information for Referral to Internal Audit dated July 31, 2025, indicated that Dr. Baptist sent an email to Dean Raines dated July 3, 2025, in which Dr. Baptist stated that a floral wall was taken out by mistake and there was a charge for it after the event. The Defendants deny any allegations in the paragraph that are not specifically admitted.

61.     With regard to Paragraph 61, the Defendants admit that the Summary of Information for Referral to Internal Audit dated July 31, 2025, indicated that Dr. Baptist identified an email from a purported research participant and an email from an individual who identified himself as "Joseph M. Grant, PhD." The Defendants deny the remainder of the paragraph.

62.     The Defendants deny Paragraph 62. The Defendants state that Internal Audit's investigation findings were reached through detailed document examination, email review, an interview and follow-up exchanges with Dr. Baptist and his counsel, site visits in South Carolina, third-party confirmation, and consultation with University units with relevant expertise.

63.     The Defendants deny Paragraph 63. The Defendants state that Dr. Baptist been given numerous opportunities to explain, clarify, and substantiate his activities, including a number of meetings with the Dean and Internal Audit.

64.     With regard to Paragraph 64, the Defendants admit that Dr. Baptist does not concede his fraud, theft, or intentional misuse of funds. The Defendants state that Dr. Baptist's allegations are false and deny them. The Defendants deny any allegations in the paragraph that are not specifically admitted.

65.    With regard to Paragraph 65, the Defendants admit that the Summary of Information for Referral to Internal Audit dated July 31, 2025, states, "Note: Having an employee's guest (such as a spouse) share lodging, at no additional expense to the University, for bona fide travel conducted on behalf of the University for purposes of official business, is not in and of itself prohibited." Defendants further state that this principle does not extend to additional costs beyond lodging, such as meals for guests. The Defendants deny any allegations in the paragraph that are not specifically admitted.

66.    The Defendants deny Paragraph 66. The Defendants state that records demonstrate that Dr. Baptist engaged in extensive efforts, using his University email, to arrange and troubleshoot housing arrangements for a 2024 UHOP event in Memphis, Tennessee, while stating in his signature block the title:

Local Hotel Coordinator
United House of Prayer

Defendants' Exhibits, 47; 48, p. 3; 49. Defendants further state that Dr. Baptist's travel to the event was paid for with research funds.

67.    With regard to Paragraph 67, the Defendants admit that dates and locations of certain church or community events match dates and locations of some of Dr. Baptist's travel and state that those matches are evidence that Dr. Baptist was traveling in a personal or private capacity and expended or caused the expenditure of University funds for personal reasons in violation of University policy. The Defendants deny any allegations in the paragraph that are not specifically admitted.

68.    The Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations in Paragraph 68 and therefore deny them.

69.     With regard to Paragraph 69, the Defendants admit that dates and locations of certain church or community events match dates and locations of some of Dr. Baptist's travel and state that those matches are evidence that Dr. Baptist was traveling in a personal or private capacity and expended or caused the expenditure of University funds for personal reasons in violation of University policy.  Defendants admit that Dr. Baptist failed to make conflict of interest disclosures that would put his supervisory chain on notice of his leadership roles within UHOP and his intent to use University funds to pay for UHOP-related travel and failed to establish any conflict of interest management plan to address the issue. The Defendants deny the remainder of the paragraph.

70.     With regard to Paragraph 70, the Defendants admit that University records do not show that Dr. Baptist held compensated outside employment through UHOP. The Defendants deny the remainder of the paragraph.

71.     With regard to Paragraph 71, the Defendants lack sufficient knowledge or information to form a belief about the truth of the allegation that any ministerial or religious affiliation that Dr. Baptist may have is not a paid outside job and therefore deny that allegation. The Defendants state that paying for personal travel undertaken for any purpose—including without limitation compensated or uncompensated ministerial or religious purposes—with University funds is prohibited. The Defendants deny any allegations in the paragraph that are not specifically admitted.

72.     The Defendants admit Paragraph 72 and state that paying for personal travel with University funds is prohibited, regardless of whether the travel involves "[a]ttendance at worship, ministry, or Black community events[.]"

19

73.     With regard to Paragraph 73, the Defendants state that Dr. Baptist's allegations are false and deny them. The Defendants deny any allegations in the paragraph that are not specifically admitted.

74.     With regard to Paragraph 74, the Defendants admit that it is the responsibility of the researcher to ensure proper IRB arrangements are in place before engaging in human subjects research. The Defendants state that in considering whether an adequate research basis existed for Dr. Baptist's travel expenditures, Defendants also reviewed whether approved protocols or exempt determinations existed for any research activities to be conducted. The Defendants deny any allegations in the paragraph that are not specifically admitted.

75.     With regard to Paragraph 75, the Defendants admit that IRB Coordinator Ro Windwalker sent Dr. Baptist a memorandum in which she stated, in part:

> Your protocol was reviewed by a Non-Compliance Subcommittee
> of the IRB in the meeting on 07/11/2025. Having reviewed the
> protocol which was approved, and determining that approval was
> allowed to lapse on 4/20/2024 while grant activities connected
> with the study continue and the intention for the research is to
> continue, the finding of non-compliance is sustained. As the
> procedures which were conducted by the local investigator met
> regulatory requirements for exempt determination, and no
> regulations were violated, this was determined to be a single
> instance of non-compliance with institutional policy which was
> neither serious nor continuing, and no sanctions are recommended.

The Defendants deny any allegations in the paragraph that are not specifically admitted.

76.     With regard to Paragraph 76, the Defendants admit that the Summary of Information for Referral to Internal Audit dated July 31, 2025, states, in part:

> Per the UA Office of Research Integrity and Compliance, an
> exemption for a multi institution research project in which Dr.
> Baptist is a participant has been approved by Georgia State, which
> is the lead institution on the project. The exempt determination was
> in place during the relevant period. A reliance agreement between
> UA and Georgia State that would recognize Georgia State's

determination as applicable to Dr. Baptist, as a UA researcher was previously not in place but is now pending.

The Defendants deny any allegations in the paragraph that are not specifically admitted.

77.     The Defendants deny Paragraph 77.

78.     With regard to Paragraph 78, the Defendants admit that Dr. Baptist's failure to have an approved protocol, reliance agreement, or exempt determination in place for human-subject research during the period of the audit runs counter to the notion that his travel was supported by adequate research purpose. The Defendants deny any allegations in the paragraph that are not specifically admitted.

79.     The Defendants admit Paragraph 79.

80.     With regard to Paragraph 80, the Defendants admit that EO & TIX Investigator CJ Moseby concluded that Dr. Baptist's race-discrimination and retaliation allegations are unfounded and admit that Investigator Moseby issued the October 28, 2025, Memorandum of Determination in which she explained the reasons for her conclusion. The Defendants admit that Investigator Mosbey's conclusion relies, in part, on notes taken by Assistant Dean Donna Johnson. The Defendants admit that Investigator Mosbey described evidence that "supports Raines' claim that Baptist's account of what Raines said at the early January virtual meeting has evolved over time, and that the assertion Baptist is now making that Raines made a racially disparaging statement about Black people (or Black faculty) is false." The Defendants deny any allegations in the paragraph that are not specifically admitted.

81.     The Defendants deny Paragraph 81.

82.     The Defendants admit Paragraph 82.

83.     The Defendants admit Paragraph 83.

84.     The Defendants admit Paragraph 84.

85.     The Defendants admit Paragraph 85.

86.     With regard to Paragraph 86, the Defendants admit that on December 15, 2025, Dr. Baptist, through his attorney, electronically submitted a zip file containing 108 Word documents to Chris Walker, who serves as the University of Arkansas System's Internal Audit Director. The Defendants deny the remainder of the paragraph. Defendants admit that the documents submitted are represented to be anonymized. The Defendants state that the 108 Word documents contain numerous anomalies (which were noted by both Internal Audit and Fulbright College, in consultation with other University units) including but not limited to replication of identical responses, lack of reported interaction between participants, presence of unusually formal and polished language (that lacks filler words, fragments, contractions and false starts), variance in British and American spellings, unusual data collection dates that occurred on major holidays, lack of summary participant data, and metadata indicating batch creation. As an example of these anomalies, the records of the purported Gala Center session indicate that as they began their answer to question two (about if politicians are actively working against people), the second participant at nearly every table said a version of, "I'd say partially[;]" and the third participant at nearly every table said precisely, "For me it's a yes." As another example of these anomalies, the records of the purported Gala Center session indicate that as they began their answer to question three (about the policy that they believed was most threatened), the first participant on nearly every panel cited health concerns; the second participant on nearly every panel cited small businesses; the third participant on nearly every panel cited civil rights; and the fourth participant on nearly every panel cited the environment. Defendants further state, upon information and belief, that the 10 Word documents appearing to depict detailed focus group/interview table discussions among more than 50 individuals conducted on June 7, 2025, at

22

the Gala Center were constructed on the basis of two pages of handwritten notes from June and the recollections of Dr. Baptist. Each document indicates that each participant provided verbal consent to participate in the discussion.

87. With regard to Paragraph 87, the Defendants admit that on December 15, 2025, Mr. Walker forwarded the 108 Word documents submitted by Dr. Baptist to Dean Raines, Associate Dean Schulte, Dr. Schreckhise, and Managing Associate General Counsel Bill Kincaid, and others for review. The Defendants admit that an authentic copy of Mr. Walker's transmittal email is included in ECF No. 2-5. The Defendants state that Dr. Baptist's attorney may have sent the 108 Word Documents to Mr. Walker twice on December 15, 2025; the first time at 7:51 am, and the second time at 7:55 am. The Defendants deny any allegations in the paragraph that are not specifically admitted.

88. With regard to Paragraph 88, the Defendants admit that Dr. Baptist participated in meetings and furnished information but initially refused to provide documentation other than four pages of handwritten notes. The Defendants deny any allegations in the paragraph that are not specifically admitted.

89. The Defendants deny Paragraph 89.

90. The Defendants deny Paragraph 90.

91. With regard to Paragraph 91, the Defendants admit that on December 15, 2025, Dr. Baptist, through his attorney, electronically submitted a zip file containing 108 Word documents to Chris Walker, who serves as the University of Arkansas System's Internal Audit Director. The Defendants state that the 108 Word documents contain numerous anomalies (which were noted by both Internal Audit and Fulbright College, in consultation with other University units) including but not limited to replication of identical responses, lack of reported interaction

between participants, presence of unusually formal and polished language (that lacks filler words, fragments, contractions and false starts), variance in British and American spellings, unusual data collection dates that occurred on major holidays, lack of summary participant data, and metadata indicating batch creation. As an example of these anomalies, the records of the purported Gala Center session indicate that as they began their answer to question two (about if politicians are actively working against people), the second participant at nearly every table said a version of, "I'd say partially[;]" and the third participant at nearly every table said precisely, "For me it's a yes." As another example of these anomalies, the records of the purported Gala Center session indicate that as they began their answer to question three (about the policy that they believed was most threatened), the first participant on nearly every panel cited health concerns; the second participant on nearly every panel cited small businesses; the third participant on nearly every panel cited civil rights; and the fourth participant on nearly every panel cited the environment. The Defendants admit that Dean Raines met with Dr. Baptist to discuss the findings of the Audit, including the extensive anomalies identified with the data. Defendants further admit that Dr. Baptist stated that he stood behind the data but provided no further explanation of the anomalies. The anomalies were also addressed  in a letter to Dr. Baptist from Dean Raines dated March 12, 2026.  That letter noted additional issues with the word documents, including, but not limited to, a set reflecting apparent focus group transcripts stated to have occurred on dates when the researcher had to evacuate from Augusta, Georgia due to a hurricane. The Defendants deny any allegations in the paragraph that are not specifically admitted.

92.     With regard to Paragraph 92, the Defendants admit that the numerous anomalies in the 108 Word documents support the conclusion that the documents are not valid evidence of

24

research purpose. The Defendants state that the anomalies are instead compelling evidence of not only legitimate, non-discriminatory, non-retaliatory, and constitutional reasons for employment action to be taken against Dr. Baptist, but also compelling evidence that Dr. Baptist breached his fiduciary duty of public trust, was unjustly enriched, converted public funds for his personal use, and committed fraud. The Defendants deny any allegations in the paragraph that are not specifically admitted.

93.    The Defendants deny Paragraph 93. In addition, as the Defendants note above with respect to Paragraph 75, IRB Coordinator Ro Windwalker sent Dr. Baptist a memorandum in which she stated, in part:

> Your protocol was reviewed by a Non-Compliance Subcommittee of the IRB in the meeting on 07/11/2025. Having reviewed the protocol which was approved, and determining that approval was allowed to lapse on 4/20/2024 while grant activities connected with the study continue and the intention for the research is to continue, the finding of non-compliance is sustained. As the procedures which were conducted by the local investigator met regulatory requirements for exempt determination, and no regulations were violated, this was determined to be a single instance of non-compliance with institutional policy which was neither serious nor continuing, and no sanctions are recommended.

94.    With regard to Paragraph 94, the Defendants admit that the numerous anomalies in the 108 Word documents are compelling evidence that Dr. Baptist fabricated research. The Defendants deny the remainder of the paragraph and once again note that IRB Coordinator Ro Windwalker sent Dr. Baptist a memorandum in which she stated, in part:

> Your protocol was reviewed by a Non-Compliance Subcommittee of the IRB in the meeting on 07/11/2025. Having reviewed the protocol which was approved, and determining that approval was allowed to lapse on 4/20/2024 while grant activities connected with the study continue and the intention for the research is to continue, the finding of non-compliance is sustained. As the procedures which were conducted by the local investigator met regulatory requirements for exempt determination, and no

regulations were violated, this was determined to be a single instance of non-compliance with institutional policy which was neither serious nor continuing, and no sanctions are recommended.

95.    The Defendants deny Paragraph 95.

96.    The Defendants deny Paragraph 96.

97.    With respect to Paragraph 97, the Defendants admit that they did not interview Dr. Grant. The Defendants state that Dr. Baptist provided an email from an individual who identified himself as "Joseph M. Grant, PhD," who—among other things—wrote that "Our study, at the Gala Event Center, was unknow to me but will certainly be used in the future." The Defendants state that Dr. Baptist was free to provide additional information from Dr. Grant. The Defendants admit that Internal Audit twice emailed Dr. Peay to seek his participation in the investigation and he did not respond. The Defendants deny the remainder of the paragraph.

98.    With regard to Paragraph 98, the Defendants admit that on March 12, 2026, Dean Raines sent a letter to Chancellor Robinson and Provost Chaubey recommending that Dr. Baptist be dismissed from employment for cause, and that an authentic copy of the letter has been filed in this action as ECF No. 2-6. The Defendants deny any allegations in the paragraph that are not specifically admitted.

99.    With regard to Paragraph 99, the Defendants admit that on March 12, 2026, Dean Raines sent Dr. Baptist a detailed grounds letter invoking theft, intentional misuse of property, University policy violations, professional dishonesty or plagiarism, unethical conduct, and a detrimental pattern of misconduct, and that an authentic copy of the letter has been filed in this action as ECF No. 2-7. The Defendants deny any allegations in the paragraph that are not specifically admitted.

100.    The Defendants admit Paragraph 100.

26

101.    The Defendants admit Paragraph 101.

102.    With regard to Paragraph 102, the Defendants admit that on March 16, 2026, Chancellor Robinson sent Dr. Baptist a letter stating that he agreed with Dean Raines's recommendation that Dr. Baptist be dismissed from employment for cause and was initiating formal proceedings to consider his dismissal from employment for cause. The Defendants admit that an authentic copy of Chancellor Robinson's letter has been filed in this action as ECF No. 2-8. The Defendants deny any allegations in the paragraph that are not specifically admitted.

103.    The Defendants deny Paragraph 103 and state that the letter informed Dr. Baptist that he had until March 27, 2026, to inform Chancellor Robinson if he wished to have a formal hearing and to provide Chancellor Robinson with a written answer to the statement of grounds for dismissal.

104.    With regard to Paragraph 104, the Defendants admit that Dr. Baptist, through counsel, sent two letters to Chancellor Robinson and Provost Chaubey dated March 25, 2026. The Defendants admit that, in one of the letters dated March 25, 2026, from his attorney, Dr. Baptist requested "that all disciplinary actions affecting his compensation and workload, as outlined in the University's and Dean Raines's March 12, 2026 correspondence, be immediately stayed pending resolution of this appeal." The Defendants, however, state that both letters referenced Fayetteville Policies and Procedures 206.9 ("Research and Scholarly Misconduct Policy"), which is not cited in Dean Raines letter to Dr. Baptist dated March 12, 2026, or in Dean Raines letter to Chancellor Robinson or Provost Chaubey dated March 12, 2026. The Defendants deny any allegations in the paragraph that are not specifically admitted.

105.    With regard to Paragraph 105, the Defendants admit that on April 1, 2026, Chancellor Robinson wrote Dr. Baptist acknowledging that Dr. Baptist's response to the

27

Chancellor's dismissal notice was insufficient to trigger the review process under the applicable policies and that a referral had been made under the University's Research Misconduct Policy. The Defendants deny any allegations in the paragraph that are not specifically admitted.

106.    With regard to Paragraph 106, the Defendants admit that Chancellor Robinson's April 1, 2026, correspondence to Dr. Baptist stated, in part: "The audit findings are final and have been accepted by the Board of Trustees." The Defendants deny any allegations in the paragraph that are not specifically admitted.

107.    With regard to Paragraph 107, the Defendants admit that Chancellor Robinson's April 1, 2026, correspondence to Dr. Baptist stated, in part:

> If you wish to have a hearing, you must provide your written answer to the statement of grounds for dismissal. If I do not receive your written answer to the statement of grounds for dismissal by 5 pm on Monday, April 6, 2026, this matter will be concluded, and your last day of employment will be Monday, April 6, 2026."

The Defendants deny any allegations in the paragraph that are not specifically admitted.

108.    With regard to Paragraph 108, the Defendants admit that Dr. Baptist submitted a letter to Chancellor Robinson dated April 6, 2026, which has a subject line that says, "Re: Dr. Najja Baptist—Request for Hearing and Written Answer to Statement of Grounds for Proposed Dismissal." The Defendants deny that this letter is attached as an exhibit to Dr. Baptist's Complaint for Damages, Declaratory Relief, and Injunctive Relief and deny the remainder of the paragraph.

109.    With regard to Paragraph 109, the Defendants admit that Dr. Baptist denied that cause existed, and denied that the University had proved theft, dishonesty, or dismissal-level misconduct in his letter to Chancellor Robinson dated April 6, 2026, which has a subject line that says, "Re: Dr. Najja Baptist—Request for Hearing and Written Answer to Statement of Grounds

28

for Proposed Dismissal[.]" The Defendants deny the remainder of the paragraph and state that Dr. Baptist's denials are unfounded.

110.    With regard to Paragraph 110, the Defendants admit that ECF No. 2-10 is a true and correct copy of a letter dated April 7, 2026, from Chancellor Robinson to Dr. Baptist. The Defendants deny the remainder of the paragraph.

111.    With regard to Paragraph 111, the Defendants admit that Dr. Baptist has contested the allegations against him and sought meaningful neutral process. The Defendants state that they have provided Dr. Baptist with meaningful neutral process. The Defendants state that, under University Policy and the terms of his appointment letter, Dr. Baptist served as Director of AAST at the pleasure of the Dean of Fulbright College, which is a position held by Dean Raines, and that Dr. Baptist's removal as Director of AAST fully complied with the University policy and the appointment letter, and did not depend on any proceedings concerning whether Dr. Baptist will be terminated from employment. The Defendants deny any allegations in the paragraph that are not specifically admitted.

112.    With regard to Paragraph 112, the Defendants admit that Internal Audit issued its report regarding Dr. Baptist's travel and related expenditures on March 9, 2026, and that the Board accepted the report. The Defendants admit that an authentic copy of the report has been filed in this action as ECF No. 2-11, pgs. 5-19. The Defendants deny the remainder of the paragraph.

113.    The Defendants admit Paragraph 113.

114.    The Defendants deny Paragraph 114 and state that a faculty hearing is not part of the audit process and that Dr. Baptist had notice of the allegations against him and multiple opportunities to respond.

115.    With regard to Paragraph 115, the paragraph does not identify the "later correspondence," so the Defendants lack sufficient knowledge or information to form a belief about the truth of the allegations in the paragraph and therefore deny them.

116.    With regard to Paragraph 116, the Defendants admit that the University is attempting to collect the debt owed by Dr. Baptist. The Defendants admit that an authentic copy of correspondence from the University of Arkansas, Fayetteville's Treasurer's Office has been filed in this action as ECF No. 2-12. The Defendants deny the remainder of the paragraph.

117.    With regard to Paragraph 117, the Defendant's admit that Dr. Baptist disputes his debt to the University and deny the remainder of the paragraph.

118.    The Defendants deny Paragraph 118. The Defendants state that the paragraph assumes false facts. The Defendants further state that they have not violated Dr. Baptist's constitutional rights.

119.    With regard to Paragraph 119, the Defendants admit that the University is attempting to collect the debt owed by Dr. Baptist and deny the remainder of the paragraph.

120.    The Defendants deny Paragraph 120.

121.    With regard to Paragraph 121, the Defendants reallege and incorporate by reference the preceding paragraphs of this answer as though fully set forth herein.

122.    The Defendants deny Paragraph 122.

123.    The Defendants deny Paragraph 123.

124.    The Defendants deny Paragraph 124.

125.    The Defendants deny Paragraph 125.

126.    The Defendants deny Paragraph 126.

127.    The Defendants deny Paragraph 127.

128.    With regard to Paragraph 128, the Defendants reallege and incorporate by reference the preceding paragraphs of this answer as though fully set forth herein.

129.    The Defendants deny Paragraph 129.

130.    The Defendants deny Paragraph 130.

131.    The Defendants deny Paragraph 131.

132.    The Defendants deny Paragraph 132.

133.    The Defendants deny Paragraph 133.

134.    The Defendants deny Paragraph 134.

135.    With regard to Paragraph 135, the Defendants reallege and incorporate by reference the preceding paragraphs of this answer as though fully set forth herein.

136.    The Defendants deny Paragraph 136.

137.    The Defendants deny Paragraph 137.

138.    The Defendants deny Paragraph 138.

139.    The Defendants deny Paragraph 139.

140.    The Defendants deny Paragraph 140.

141.    The Defendants deny Paragraph 141.

142.    The Defendants deny Paragraph 142.

143.    With regard to Paragraph 143, the Defendants reallege and incorporate by reference the preceding paragraphs of this answer as though fully set forth herein.

144.    The Defendants admit Paragraph 144.

145.    The Defendants admit Paragraph 145.

146.    The Defendants deny Paragraph 146.

147.    The Defendants deny Paragraph 147.

148.    With regard to Paragraph 148, the Defendants admit that Chancellor Robinson is the chief executive officer of the University of Arkansas, Fayetteville and deny the remainder of the paragraph.

149.    The Defendants deny Paragraph 149.

150.    The Defendants deny Paragraph 150.

151.    With regard to Paragraph 151, the Defendants reallege and incorporate by reference the preceding paragraphs of this answer as though fully set forth herein.

152.    The Defendants deny Paragraph 152.

153.    The Defendants deny Paragraph 153.

154.    The Defendants deny Paragraph 154.

155.    The Defendants deny Paragraph 155, including all subparagraphs.

156.    The Defendants deny Paragraph 156, state that the paragraph assumes false facts, and state that Dr. Baptist's right to due process has not been violated.

157.    The Defendants deny Paragraph 157.

158.    With regard to Paragraph 158, the Defendants admit that Chancellor Robinson is the chief executive officer of the University of Arkansas, Fayetteville, and deny the remainder of the paragraph.

159.    With regard to Paragraph 159, the Defendants admit that Dr. Fessler is the Chief Financial Officer of the University of Arkansas, Fayetteville and deny the remainder of the paragraph.

160.    The Defendants deny Paragraph 160.

161.    The Defendants deny that Dr. Baptist is entitled to any of the relief requested in the complaint's "Prayer for Relief" and further state that Dr. Baptist is not entitled to any relief whatsoever.

162.    The Defendants deny any allegation that is not specifically admitted.

163.    Dr. Baptist's complaint fails to state a claim upon which relief can be granted.

164.    Dr. Baptist cannot establish required elements of any claim.

165.    The Defendants have not violated Title VII.

166.    The Defendants have not violated Dr. Baptist's right to equal protection.

167.    The Defendants have not violated Dr. Baptist's right to procedural due process.

168.    The Defendants have not discriminated against Dr. Baptist.

169.    The Defendants have not retaliated against Dr. Baptist.

170.    The Defendants have not created or permitted a hostile work environment.

171.    Dr. Baptist's Title VII claims must be dismissed because he has not met the procedural requirements for filing them.

172.    Dr. Baptist's Title VII claims must be dismissed because he has not exhausted them in an EEOC Charge.

173.    Dr. Baptist's Title VII claims must be dismissed because his EEOC Charge is untimely.

174.    Dr. Baptist's claims are barred by the applicable statute of limitations.

175.    Dr. Baptist has failed to state a Title VII claim against Dean Raines, Chancellor Robinson, Provost Chaubey, or Dr. Fessler. In addition, punitive damages are not available against them in their official capacity because, in that capacity, they are government entities. Further, individual-capacity defendants are not subject to suit under Title VII.

176. Dr. Baptist has failed to state grounds upon which punitive damages may be awarded.

177. Punitive damages are not available under Title VII against the Board because it is a governmental entity.

178. Dr. Baptist's § 1983 claims against the Board are barred by sovereign immunity.

179. Dr. Baptist's claims against Dean Raines are barred by qualified immunity.

180. All employment decisions with regard to Dr. Baptist were based on legitimate non-discriminatory and non-retaliatory reasons and the business-judgment rule applies.

181. The Defendants did not cause any harm, injury, or damage to Dr. Baptist.

182. Any damages experienced by Dr. Baptist are due in whole or in part to his own actions.

183. The Defendants acted in good faith at all times relevant to the alleged facts set forth in Dr. Baptist's complaint.

184. Dr. Baptist is not entitled to damages.

185. Dr. Baptist is not entitled to any relief.

WHEREFORE, the Defendants respectfully request that the Court dismiss Dr. Baptist's complaint with prejudice.

## DEFENDANT-COUNTERCLAIM PLAINTIFF BOARD OF TRUSTEES' COUNTERCLAIMS

For its Counterclaims against Dr. Baptist, the Board of Trustees of the University of Arkansas states:

186. The preceding paragraphs are incorporated herein by reference.

**Jurisdiction and Venue**

187.    The Board's counterclaims arise under Arkansas law.

188.    The Board's counterclaims are so related to Dr. Baptist's claims that they form part of the same case or controversy under Article III of the United States Constitution.

189.    The Court has subject-matter jurisdiction under 28 U.S.C. § 1367(a).

190.    Venue is proper in the Western District of Arkansas under 28 U.S.C. § 1391(b)(1) because Dr. Baptist resides in the District, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the counterclaims occurred in the District.

**The Board**

191.    Under Arkansas law, "The Board of Trustees of the University of Arkansas is made a body politic and corporate and shall have all the powers of a corporate body, subject to the Arkansas Constitution and laws of the State of Arkansas, and the board possesses all the power and authority possessed by the board of trustees of the university under laws existing on March 30, 1887." Ark. Code Ann. § 6-64-202.

192.    Arkansas law also states, "The Board of Trustees of the University of Arkansas shall have power to prescribe all rules for the government and discipline of the University of Arkansas, subject to the provisions of this subchapter and such other acts of the General Assembly as may be prescribed." Ark. Code Ann. § 6-64-203.

193.    Further, "The General Assembly, in appropriating moneys for the benefit of the University of Arkansas, shall specify the precise amount that it intends to appropriate for each and every purpose, and the Board of Trustees of the University of Arkansas shall apply each sum as thus directed, and in no other way." Ark. Code Ann. § 6-64-1002.

**Dr. Baptist's T-Card Requests and University Policy**

194.    On or about February 3, 2025, Dr. Baptist submitted a Credit Card Request for a Travel Card with a $10,000 monthly spending limit. A true and correct redacted copy of the Credit Card Request is attached as Defendant's Exhibit 1 (material that Dr. Baptist might consider confidential has been redacted).

195.    In the Credit Card Request, Dr. Baptist agreed to complete all required training. Defendant's Exhibit 1.

196.    In the Credit Card Request, Dr. Baptist agreed "follow all policies and procedures established for use of the Travel Card." Defendant's Exhibit 1, p. 1.

197.    In the Credit Card Request, Dr. Baptist agreed that he would "not use the credit card for non-Institution related business, unauthorized purchases, or personal purchases." Defendant's Exhibit 1, p. 1.

198.    Based on these and other representations by Dr. Baptist in the Credit Card Request, the Board issued a Bank of America Credit Card, known as a Travel Card or "T-Card," with a single transaction limit and a monthly credit limit of $10,000 to Dr. Baptist.

199.    On or about March 17, 2025, Dr. Baptist submitted a Request update to Credit Card Information in which he requested that the monthly spending limit of the Travel Card issued to him be increased to $15,000. A true and correct copy of the Request update to Credit Card Information is attached as Defendants' Exhibit 2.

200.    In the Request update to Credit Card Information, Dr. Baptist stated that he had "completed all required training[.]" Defendants' Exhibit 2, p. 1.

201.    In the Request update to Credit Card Information, Dr. Baptist agreed "to follow all policies and procedures established for use of the Travel Card." Defendants' Exhibit 2, p. 1.

36

202.   In the Request update to Credit Card Information, Dr. Baptist agreed that he would "not use the credit card for non-Institution related business, unauthorized purchases, or personal purchases." Defendants' Exhibit 2, p. 2.

203.   Based on these and other representations by Dr. Baptist in the Request update to Credit Card Information, the Board increased the monthly spending limit of the Travel Card issued to him to $15,000. Defendants' Exhibit 2.

204.   The policies and procedures established for use of the Travel Card issued to Dr. Baptist include the University of Arkansas, Fayetteville's policy titled "Policy – TCard." A true and correct copy of this policy ("the campus T-Card policy") is attached as Defendants' Exhibit 3.

205.   The campus T-Card Policy states, in part: "**PERSONAL CHARGES NOT RELATED TO A BUSINESS TRIP ARE STRICTLY FORBIDDEN**." Defendants' Exhibit 3, p. 2 (emphasis in original).

206.   The campus T-Card Policy states, in part: "Cardholders are responsible for the following: … "3. **ONLY USING THE TRAVEL CARD FOR UNIVERSITY BUSINESS.**" Defendants' Exhibit 3, p. 6. (emphasis in original).

207.   Policies and procedures that govern travel by University employees include the University of Arkansas Fayetteville's policy titled "Travel Policy."

208.    In a section titled "Expenses Not Allowed/Restrictions," the Travel Policy lists expenses for which University funds may not be used. A true and correct copy of this section is attached as Defendants' Exhibit 4.

209.   Among the expenses for which University funds may not be used are: "Personal entertainment, clothing, valet services (unless that is the only parking available at the hotel),

37

flowers, alcoholic beverages, personal telephone calls, traveler's check service charges, laundry or cleaning, printing items, **or any other items not considered to be official business expenses** unless specifically authorized by the Travel Office in writing." Defendants' Exhibit 4, p. 1. (emphasis in original).

210.    Notwithstanding his agreements and University policy, Dr. Baptist used the T-Card issued to him to pay for, caused an Administrative T-Card used by a unit of the University to be used to pay for, or requested and received reimbursement for non-Institution related business, unauthorized purchases, and personal purchases for travel to various destinations.

211.    Among University funds caused to be wrongfully expended by Dr. Baptist were funds derived from National Science Foundation funds and private endowment funds.

212.    Broadly speaking, University policy prohibits expenditure of university funds and card use for any expenses that are not official business expenses.  This Includes circumstances where the employee is impermissibly blending personal activities with official activities without full disclosure and an approved conflict management plan.

**Columbia, South Carolina**
**Pawleys Island, South Carolina**
**June 4, 2025, to July 13, 2025**

213.    From on or about June 4, 2025, to on or about July 13, 2025, Dr. Baptist traveled to Columbia, South Carolina, and Pawleys Island, South Carolina, for personal reasons.

214.    Grace Gierach is employed as a business services/program specialist at the University of Arkansas, Fayetteville.

215.    In an email dated May 29, 2025, Dr. Baptist asked Ms. Gierach to fill out an Official Function From on his behalf. Defendants' Exhibit 5.

216.    A true and correct copy of Dr. Baptist's May 29, 2025, email to Ms. Gierach is attached as Defendants' Exhibit 5.

217.    In his May 29, 2025, email to Ms. Gierach, Dr. Baptist stated:

> Also, smart carte does not give receipts for carts. Please fill out the form on my behalf.
>
> Justification for Event Expenses
>
> The expenditures of $1,600 covers the rental of the Gala Event Center as the venue and $500 for catering services provided by Tupelo Honey Kitchen for an upcoming focus group and community meeting. The Gala Event Center was selected due to its accessible location, appropriate capacity, and necessary amenities to facilitate productive discussions and community engagement. Tupelo Honey Kitchen was chosen for their quality catering, which will ensure attendees are comfortably nourished and engaged throughout the event. These purchases are essential to creating a professional, welcoming environment that encourages meaningful participation and gathers valuable input from research subjects who are community members.

Defendants' Exhibit 5.

218.    Ms. Gierach filled out the Official Function Form on Dr. Baptist's behalf. Defendants' Exhibit 6.

219.    A true and correct copy of the Official Function Form is attached as Defendants' Exhibit 6.

220.    Ms. Gierach used information provided by Dr. Baptist to fill out the Official Function Form. Defendants' Exhibit 6.

221.    Dr. Baptist signed the Official Function Form after Ms. Gierach filled it out. Defendants' Exhibit 6.

222.    The Official Function Form stated:

> Dr. Baptist will host an upcoming focus group and community meeting for his work in the Blair Center. The Gala Event Center

39

was selected due to its accessible location, capacity, and amenities to facilitate productive discussions and community engagement. This event will create a professional, welcoming environment that encourages meaningful participation and gathers valuable input from research subjects.

Defendants' Exhibit 6.

223. The Official Function Form indicated that attendees at the focus group and community meeting would include Dr. Baptist and approximately 75 research participants. Defendants' Exhibit 6.

224. The Official Function Form stated, "Identities of research participants must remain confidential". Defendants' Exhibit 6.

225. The Official Function Form has a blank for "Dates of Event" that was filled in with "6/7/25". Defendants' Exhibit 6.

226. The Official Function Form contains an estimate of $1620 of expenses for the focus group and community meeting's "Meeting Room/Rental Charges". Defendants' Exhibit 6.

227. The Official Function Form contains an estimate of $2280 of expenses for the focus group and community meeting's "Food Expenses". Defendants' Exhibit 6.

228. The Official Function Form contains an estimate of $4000 of total expenses for the focus group and community meeting. Defendants' Exhibit 6.

229. William Schreckhise ("Dr. Schreckhise") began serving as chair of the Department of Political Science in 2019.

230. Dr. Baptist submitted the Official Function Form to Dr. Schreckhise. Defendants' Exhibit 6.

40

231.     Based on Dr. Baptist's representations in the Official Function Form, Dr. Schreckhise signed the form indicating his approval of the estimated expenditures for the focus group and community meeting. Defendants' Exhibit 6.

232.     The Gala Event Center is located in Columbia, South Carolina.

233.     Dr. Schreckhise received via text message an invitation from Dr. Baptist to attend his wedding at noon on June 7, 2025, in Columbia, South Carolina. Defendants' Exhibit 7.

234.     A true and correct copy of the wedding invitation that Dr. Baptist sent via text message to Dr. Schreckhise is attached as Defendants' Exhibit 7.

235.     The wedding invitation indicated that there would be a "Private Dinner Reception" at 3:30 pm on Saturday, June 7, 2025, at the Gala Event Center. Defendants' Exhibit 7, p. 3.

236.     The wedding invitation stated, "This is a private dinner reserved for our close family and friends. It will occur at The Gala Event Center 1801 Bush River Road Columbia, SC 29210. In lieu of gifts, we ask for monetary donations towards our honey moon." Defendants' Exhibit 7, p. 4 (underscore in original).

237.     Dr. Baptist reserved lodging from June 7-10, 2025, at a VRBO "Pawleys Plantanion Villa" at Pawleys Island, South Carolina, for three nights. Defendants' Exhibit 40, pgs. 2-9.

238.     On June 2, 2025, shortly before his wedding, Dr. Baptist wrote a colleague declining a follow-up phone call and stated: "i will be on my honeymoon.  Try the next week."

239.     On Tuesday, June 3, Dr. Baptist wrote three colleagues and stated, "I'm available next Wednesday.  Got a wedding and honeymoon this week."

240.    On or about June 12, 2025, Dr. Baptist posted a statement on VRBO's webpage for "Pawleys Plantanion Villa." Defendants' Exhibit 8.

241.    A true and correct copy of Dr. Baptist's statement dated June 12, 2025, on VRBO's webpage for "Pawleys Plantanion Villa" is attached as Defendants' Exhibit 8.

242.    In his statement dated June 12, 2025, on VRBO's webpage for "Pawleys Plantanion Villa," Dr. Baptist wrote, in part: "Some properties feel like hotels. This property feels like home. Tracie provided a spectacular stay for us newlyweds." Defendants' Exhibit 8.

243.    The VRBO property where Dr. Baptist stayed is located in Pawleys Plantation Golf and Country Club.

244.    Pawleys Plantation Golf and Country Club is gated and guarded.

245.    Standard hotel accommodations such as Best Western and Hampton Inn are available in Pawley's Island.

246.    Dr. Baptist submitted a receipt for a meal at a Pawley's Island dining establishment dated June 10, 2025. The receipt indicated there were two guests who ordered 2 waters, 2 more drinks, 3 appetizers, and 2 entrees, for a total bill paid of $114.59.  Dr. Baptist reported that Dr. Baptist told Dean Raines that he was the only guest and ate all of the food ordered and told Grace Gierach that "All meals were solo".  However, Internal Audit confirmed with a waitress at the establishment that Dr. Baptist dined with a female guest on June 10, 2025, and that he did not consume all of the items listed on the receipt as stated. Internal Audit's report noted multiple meal receipts with two guests (one with three), two drinks, two appetizers, and two entrees charged to the University.

247.    Dr. Baptist used $11,229.02 of University funds to pay for his wedding reception and honeymoon.

42

248.    Dr. Baptist used the T-Card that was issued to him under the Board's authority to spend $10,697.59, caused an administrative T-Card issued under the Board's authority to be used to spend $3774.15, and requested but was denied reimbursement of $37.46, for purchases associated with travel to Memphis, Tennessee, from on or about May 31, 2025, to on or about June 4, 2025, and travel to Columbia, South Carolina, and Pawleys Island, South Carolina, from on or about June 4, 2025, to or about July 13, 2025. Dr. Baptist represented that these purchases, which are listed in Travel Expense Reimbursement & Reconciliation Forms (see Defendants' Exhibits 40, 41, 42, 43, 44, 45, and 46), were for University business, authorized purchases, and not for personal charges.

249.    Dr. Baptist also used the T-Card issued to him under the Board's authority for, caused an Administrative T-Card issued to a unit of the University under the Board's authority to be used for, and requested and received reimbursement from the University for additional non-Institution related business, unauthorized purchases, and personal purchases related to travel to various destinations.

**Augusta, Georgia**
**September 22, 2024, to September 30, 2024**

250.    Dr. Baptist caused an administrative T-Card issued under the Board's authority to spend $3,286.47 and requested and received reimbursement of $501.50 for purchases associated with travel to Augusta, Georgia, from on or about September 22, 2024, to on or about September 30, 2024. Dr. Baptist represented that these purchases, which are listed in Travel Expense Reimbursement & Reconciliation Forms, which are sometimes called "Expense Reports" or "TR-1s," (see Defendants' Exhibits 9, 10, and 11) were for University business, authorized purchases, and not for personal charges.

**Charlotte, North Carolina**
**October 3, 2024, to October 7, 2024**

251.    Dr. Baptist caused an administrative T-Card issued under the Board's authority to be used to spend $1,458.20 and requested and received reimbursement of $1,339.05 for purchases associated with travel to Charlotte, North Carolina, from on or about October 3, 2024, to on or about October 7, 2024. Dr. Baptist represented that these purchases, which are listed in Travel Expense Reimbursement & Reconciliation Forms (see Defendants' Exhibits 12 and 13), were for University business, authorized purchases, and not for personal charges.

**New Orleans, Louisiana**
**November 15, 2024, to November 17, 2024**

252.    Dr. Baptist caused an administrative T-Card issued under the Board's authority to be used to spend $1,272.13 and requested and received reimbursement of $212.02 for purchases associated with travel to New Orleans, Louisiana, from on or about November 15, 2024, to on or about November 17, 2024. Dr. Baptist represented that these purchases, which are listed in Travel Expense Reimbursement & Reconciliation Forms (see Defendants' Exhibits 14 and 15), were for University business, authorized purchases, and not for personal charges.

**Memphis, Tennessee**
**November 27, 2024, to December 1, 2024**

253.    Dr. Baptist caused an administrative T-Card issued under the Board's authority to be used to spend $2,659.72 and requested and received reimbursement of $357.02 for purchases associated with travel to Memphis, Tennessee, from on or about November 27, 2024, to on or about December 1, 2024. Dr. Baptist represented that these purchases, which are listed in Travel Expense Reimbursement & Reconciliation Forms (see Defendants' Exhibits 16, 17, and 18), were for University business, authorized purchases, and not for personal charges.

44

**Charlotte, North Carolina**
**Durham, North Carolina**
**Columbia, South Carolina**
**Savannah, Georgia**
**Augusta, Georgia**
**December 13, 2024, to January 7, 2025**

254.    Dr. Baptist caused an administrative T-Card issued under the Board's authority to be used to spend $3,944.29, and requested and received reimbursement of $1,909.84, for purchases associated with travel to Charlotte, North Carolina; Durham, North Carolina; Columbia, South Carolina; Savannah, Georgia; and Augusta, Georgia, from on or about December 13, 2024, to on or about January 7, 2025. Dr. Baptist represented that these purchases, which are listed in Travel Expense Reimbursement & Reconciliation Forms (see Defendants' Exhibits 19, 20, 21, and 22), were for University business, authorized purchases, and not for personal charges.

**Chattanooga, Tennessee**
**January 17, 2025, to January 19, 2025**

255.    Dr. Baptist requested and received reimbursement of $627.54 for purchases associated with travel to Chattanooga, Tennessee, from on or about January 17, 2025, to on or about January 19, 2025. Dr. Baptist represented that these purchases, which are listed in a Travel Expense Reimbursement & Reconciliation Form (see Defendants' Exhibit 23), were for University business, authorized purchases, and not for personal charges.

**Hattiesburg, Mississippi**
**March 7, 2025, to March 9, 2025**

256.    Dr. Baptist used the T-Card that was issued to him under the Board's authority to spend $58.53, caused an administrative T-Card issued under the Board's authority to be used to spend $1,530.35, and requested and received reimbursement of $185.97 for purchases associated with travel to Hattiesburg, Mississippi, from on or about March 7, 2025, to on or about March 9,

45

2025. Dr. Baptist represented that these purchases, which are listed in Travel Expense Reimbursement & Reconciliation Forms (see Defendants' Exhibits 24, 25, and 26), were for University business, authorized purchases, and not for personal charges.

**New Orleans, Louisiana**
**Miami, Florida**
**March 22, 2025, to March 31, 2025**

257. Dr. Baptist used the T-Card that was issued to him under the Board's authority to spend $660.14, caused an administrative T-Card issued under the Board's authority to be used to spend $4,408.88, and requested and received reimbursement of $1,021.43 for purchases associated with travel to New Orleans, Louisiana; and Miami, Florida, from on or about March 22, 2025, to on or about March 31, 2025. Dr. Baptist represented that these purchases, which are listed in Travel Expense Reimbursement & Reconciliation Forms (see Defendants' Exhibits 27 and 28), were for University business, authorized purchases, and not for personal charges.

**Columbia, South Carolina**
**April 12, 2025, to April 21, 2025**

258. Dr. Baptist used the T-Card that was issued to him under the Board's authority to spend $941.65, caused an administrative T-Card issued under the Board's authority to be used to spend $1,011.68, and requested and received reimbursement of $675.19 for purchases associated with travel to Columbia, South Carolina, from on or about April 12, 2025, to on or about April 21, 2025. Dr. Baptist represented that these purchases, which are listed in Travel Expense Reimbursement & Reconciliation Forms (see Defendants' Exhibits 29 and 30), were for University business, authorized purchases, and not for personal charges.

**Columbia, South Carolina**
**May 8, 2025, to May 9, 2025**

259.    Dr. Baptist used the T-Card that was issued to him under the Board's authority to spend $498.18 and requested and received reimbursement of $111.00 for purchases associated with travel to Columbia, South Carolina, from on or about May 8, 2025, to on or about May 9, 2025. Dr. Baptist represented that these purchases, which are listed in Travel Expense Reimbursement & Reconciliation Forms (see Defendants' Exhibit 31), were for University business, authorized purchases, and not for personal charges.

### Columbia, South Carolina
### May 17, 2025, to May 19, 2025

260.    Dr. Baptist used the T-Card that was issued to him under the Board's authority to spend $335.01, caused an administrative T-Card issued under the Board's authority to be used to spend $571.36, and requested and received reimbursement of $27.65 for purchases associated with travel to Columbia, South Carolina, from on or about May 17, 2025, to on or about May 19, 2025. Dr. Baptist represented that these purchases, which are listed in Travel Expense Reimbursement & Reconciliation Forms (see Defendants' Exhibits 32, 33, 34, 35, and 36), were for University business, authorized purchases, and not for personal charges.

### Washington, D.C.
### May 21, 2025, to May 26, 2025

261.    Dr. Baptist used the T-Card that was issued to him under the Board's authority to spend $664.11 and caused an administrative T-Card issued under the Board's authority to be used to spend $2006.47, for purchases associated with travel to Washington, D.C., from on or about May 21, 2025, to on or about May 26, 2025. Dr. Baptist represented that these purchases, which are listed in Travel Expense Reimbursement & Reconciliation Forms (see Defendants' Exhibits 37, 38, and 39), were for University business, authorized purchases, and not for personal charges.

**Authenticity of Defendants' Expense-Report Exhibits and the Board's Damages**

262.    Defendants' Exhibits 9 through 46, attached hereto, are true and correct copies of the Travel Expense Reimbursement & Reconciliation Forms referenced in Paragraphs ___ to ___ that include financial-support documentation, but not non-financial-support documentation concerning Dr. Baptist that he might consider confidential.

263.    The purchases reported in Defendants' Exhibits 9 through 46 are for non-Institution related business, for unauthorized purchases, and for Dr. Babtist's personal purchases.

264.    Dr. Baptist breached his fiduciary of public trust, converted public funds for his personal use, was unjustly enriched, and committed fraud by representing that these purchases were for institution-related business, authorized purchases, and not for personal purchases.

265.    The Board's damages exceed the amount required for diversity-of-citizenship jurisdiction in federal court.

**Counterclaim Count I:**
**Breach of Fiduciary Duty of Public Trust**

266.    The preceding paragraphs are incorporated herein by reference.

267.    It is "elementary that a public officer occupies a fiduciary position, and that in disbursing public funds, he must be as free from self-interest, direct or indirect, as any other trustee." *State ex rel. Attorney General v. Broadway*, 192 Ark. 634, 93 S.W.2d 1248, 1253 (1936).

268.    The University entrusted Dr. Baptist with managing and administering public funds appropriated to the Board for the benefit of the University of Arkansas. Ark. Code Ann. § 6-64-1002. Dr. Baptist had a fiduciary duty to enter into transactions as an employee of the University that were "free from self-interest, direct or indirect." *Broadway*, 192 Ark. 634, 93 S.W.2d at 1253.

48

269.    Dr. Baptist breached his fiduciary duty of public trust by using the T-Card that was issued to him under the Board's authority for the non-Institution related business, the unauthorized purchases, and the personal purchases reported in Defendants' Exhibits 9 – 46.

270.    Dr. Baptist breached his fiduciary duty of public trust by causing an administrative T-Card issued under the Board's authority to be used for the non-Institution related business, the unauthorized purchases, and the personal purchases reported in Defendants' Exhibits 9 – 46.

271.    Dr. Baptist breached his fiduciary duty of public trust by requesting and receiving reimbursement from University funds for the non-Institution related business, the unauthorized purchases, and the personal purchases reported in Defendants' Exhibits 9 – 46.

272.    The Board was damaged as a result of Dr. Baptist's breaches of his fiduciary duty of public trust when the University paid the charges that Dr. Baptist placed on the T-Card issued to him, when the University paid the charges that Dr. Baptist caused to be placed on an administrative T-Card, and when the University granted Dr. Baptist's requests for reimbursement and used University funds to reimburse him.

273.    The Court should impose punitive damages because Dr. Baptist knew or ought to have known, in the light of the surrounding circumstances, that his conduct would naturally and probably result in damage to the Board and he continued such conduct with malice or in reckless disregard of the consequences from which malice may be inferred.

**Counterclaim Count II:**
**Conversion of Public Funds**

274.    The preceding paragraphs are incorporated herein by reference.

49

275.    Conversion is the exercise of dominion over property in violation of the rights of the owner or person entitled to possession with intent to exercise dominion or control over the goods that is in fact inconsistent with the plaintiff's rights. *Grayson v. Bank of Little Rock*, 334 Ark. 180, 188, 971 S.W.2d 788, 792 (1998).

276.    The Arkansas General Assembly has appropriated funds for the benefit of the University of Arkansas, and the Board has the right to those funds for that purpose. Ark. Code Ann. § 6-64-1002.

277.    Dr. Baptist intentionally exercised dominion and control over funds the Arkansas General Assembly appropriated for the benefit of the University of Arkansas in a manner that is inconsistent with the Board's rights by using the T-Card that was issued to him under the Board's authority for the non-Institution related business, the unauthorized purchases, and the personal purchases reported in Defendants' Exhibits 9 – 46.

278.    Dr. Baptist intentionally exercised dominion and control over funds the Arkansas General Assembly appropriated for the benefit of the University of Arkansas in a manner that is inconsistent with the Board's rights by causing an administrative T-Card issued under the Board's authority to be used for the non-Institution related business, the unauthorized purchases, and the personal purchases reported in Defendants' Exhibits 9 – 46.

279.    Dr. Baptist intentionally exercised dominion and control over funds the Arkansas General Assembly appropriated for the benefit of the University of Arkansas in a manner that is inconsistent with the Board's rights by requesting and receiving reimbursement from University funds for the non-Institution related business, the unauthorized purchases, and the personal purchases reported in Defendants' Exhibits 9 – 46.

280.    The Board was damaged as result of Dr. Baptist's conversion of these funds when the University paid the charges that Dr. Baptist placed on the T-Card issued to him, when the University paid the charges that Dr. Baptist caused to be placed on the Administrative T-Card, and when the University granted Dr. Baptist's requests for reimbursement and used University funds to reimburse him.

281.    The Court should impose punitive damages because Dr. Baptist knew or ought to have known, in the light of the surrounding circumstances, that his conduct would naturally and probably result in damage to the Board and he continued such conduct with malice or in reckless disregard of the consequences from which malice may be inferred.

**Counterclaim Count III:**
**Unjust Enrichment**

282.    The preceding paragraphs are incorporated herein by reference.

283.    "To find unjust enrichment, a party must have received something of value, to which it is not entitled and which it must restore. An action based on unjust enrichment is maintainable where a person has received money or its equivalent in the context that, in equity and good conscience, he or she ought not to retain." *City of Fort Smith v. Merriott*, 2023 Ark. 51, 6, 660 S.W.3d 809, 813 (2023)(citations omitted).

284.    Dr. Baptist was unjustly enriched at the University's expense when he used the T-Card that was issued to him under the Board's authority for the non-Institution related business, the unauthorized purchases, and the personal purchases reported in Defendants' Exhibits 9 – 46.

285.    Dr. Baptist was unjustly enriched at the University's expense when he caused an administrative T-Card issued under the Board's authority to be used for the non-Institution related business, the unauthorized purchases, and the personal purchases reported in Defendants' Exhibits 9 – 46.

286. Dr. Baptist was unjustly enriched at the University's expense when he requested and received reimbursement from University funds for the non-Institution related business, the unauthorized purchases, and the personal purchases reported in Defendants' Exhibits 9 – 46.

287. The Board was damaged when Dr. Baptist was unjustly enriched at the University's expense.

288. The Court should impose punitive damages because Dr. Baptist knew or ought to have known, in the light of the surrounding circumstances, that his conduct would naturally and probably result in damage to the Board and he continued such conduct with malice or in reckless disregard of the consequences from which malice may be inferred.

### Counterclaim Count IV:
### Fraud

289. The preceding paragraphs are incorporated herein by reference.

290. Under Arkansas law, a defendant is liable for civil fraud or deceit when he:

(1) Makes a false representation;

(2) Knows the representation is false or lacks a sufficient basis;

(3) Intends for the plaintiff to rely on the false representation;

(4) The plaintiff justifiably acts in reliance; and

(5) The plaintiff is damaged as a result.

*Fidelity Mortgage Co. of Texas v. Cook*, 307 Ark. 496, 821 S.W.2d 39 (1991).

291. Each time Dr. Baptist used the T-Card that was issued to him under the Board's authority to make a purchase reported in Defendant's Exhibits 9 – 46, he made a false representation to the University that the purchase was for Institution-related business, for an authorized purchase, and not for a personal purchase.

52

292.    Each time Dr. Baptist caused an administrative T-Card issued under the Board's authority to be used to make a purchase reported in Defendant's Exhibits 9 – 46, he made a false representation to the University that the purchase was for Institution-related business, for an authorized purchase, and not for a personal purchase.

293.    Each time Dr. Baptist requested and received reimbursement for a purchase reported in Defendants' Exhibits 9 – 46, he made a false representation to the University that the expense was for Institution-related business, for an authorized purchase, and not for a personal purchase.

294.    Dr. Baptist made these representations with knowledge they were false, and he intended for the University to rely on them.

295.    The University justifiably relied on Dr. Baptist's false representations each time it paid the charges reported in Defendants' Exhibits 9 – 46 that Dr. Baptist placed on the T-Card issued to him, each time the University paid the charges reported in Defendants' Exhibits 9 – 46 that Dr. Baptist caused to be placed on the Administrative T-Card, and each time the University granted Dr. Baptist's requests for reimbursement for the charges reported in Defendants' Exhibits 9 – 46 and used University funds to reimburse him.

296.    As a result, the Board was damaged each time the University paid the charges reported in Defendants' Exhibits 9 – 46 that Dr. Baptist placed on the T-Card issued to him, each time the University paid the charges reported in Defendants' Exhibits 9 – 46 that Dr. Baptist caused to be placed on the Administrative T-Card, and each time the University granted Dr. Baptist's requests for reimbursement for the charges reported in Defendants' Exhibits 9 – 46 and used University funds to reimburse him.

53

297.    The Court should impose punitive damages because Dr. Baptist knew or ought to have known, in the light of the surrounding circumstances, that his conduct would naturally and probably result in damage to the Board and he continued such conduct with malice or in reckless disregard of the consequences from which malice may be inferred.

**Jury Demand**

298.    The Board respectfully demands a jury.

**Prayer for Relief**

WHEREFORE, the Board of Trustees of the University of Arkansas respectfully requests that the Court enter judgment in its favor and grant the following relief:

A.    Award compensatory damages in an amount to be determined by the jury;

B.    Award punitive damages;

C.    Award prejudgment interest and post-judgment interest; and,

D.    Award such other and further relief as the Court deems just and proper.

WHEREFORE, the Board prays that the Court enter judgment against Dr. Baptist and order recovery of compensatory damages, punitive damages, prejudgment interest, post-judgment interest, all in an amount that exceeds the amount required for diversity jurisdiction, and award all other just and proper relief.

Respectfully submitted,
University of Arkansas Office
of the General Counsel

By:    William R. Kincaid
Arkansas Bar No. 93125
Managing Associate
General Counsel (Fayetteville)

/s/ C. Joseph Cordi, Jr.

54

C. Joseph Cordi, Jr.
Arkansas Bar No. 91225
Associate General Counsel

305 Administration Building
University of Arkansas
Fayetteville, AR 72701

Phone: (479) 575-5401

Email:  wkincaid@uark.edu
        joecordi@uark.edu

Counsel for the Defendant-Counterclaim
Plaintiff and the Defendants

55